No. 22,194.

KATE VANDLING, *Appellant,* v. ED A. GRIFFITH, *Appellee,* et al.

SYLLABUS BY THE COURT.

EJECTMENT—*Boundary Line—Recognition and Acquiescence.* The facts considered, and held to warrant the inference that a line not the true boundary had become the boundary between two tracts of land, by recognition and acquiescence.

Appeal from Pawnee district court; ALBERT S. FOULKS, judge. Opinion filed November 8, 1919. Affirmed.

*P. A. Earhart,* of Hutchinson, and *G. P. Cline,* of Larned, for the appellant.

*W. H. Vernon, W. H. Vernon, jr.,* and *J. S. Vernon,* all of Larned, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one of ejectment, growing out of a boundary dispute. The plaintiff was defeated, and appeals.

The boundary in controversy was the range line separating sections in township twenty, south, lying in range seventeen, from sections lying in range eighteen. The particular sections involved were section nineteen, in range seventeen, and section twenty-four, immediately across the line in range eighteen. The plaintiff owns the northeast quarter of section twenty-four, and the defendant owns the west half of section nineteen. The plaintiff's land was granted to Archibald Vandling on November 13, 1884, by a government patent calling for 160 acres. The plaintiff is the patentee's widow. The defendant's land was railroad land, granted to the state of Kansas by act of Congress of March 3, 1863, and was patented by the state to the Atchison, Topeka and Santa Fe Railway Company in April, 1873. In November, 1893, Samuel Evans became the owner of section nineteen, by a deed calling for 640 acres. After several conveyances, the defendant became the owner of the west half of the section on February 1, 1909, by a deed calling for 324.95 acres. When the region was surveyed there was an excess in the township in which section nineteen lies, and the excess was placed in lots along the west side next to the range line. According to the government survey, the north quarter section of the defendant's land—the northwest quarter of nineteen—which adjoins the plaintiff's land on the east, contains 162.78 acres. The two adjoining quarters do not contain 322.78 acres. According to testimony introduced by the plaintiff, the shortage amounts to 23.84 acres. A similar shortage exists in the other sections in the tiers on each side of the range line, and the government has conveyed more acres of land than there are in existence.

The original government survey was made in 1869. In 1884 a government resurvey was made, known as the Hackbush survey. This survey followed the former government survey line. In 1886 a survey was made, known as the Dickinson survey, which departed from the government survey. The defendant claims to the line of the Dickinson survey, which gives him his proper acreage, but makes the plaintiff's land 23.84 acres

short in quantity. The plaintiff claims to the line of the government survey, which gives her her proper acreage, but makes the defendant's land 23.84 acres short. The court found that the government line is the true line, but that the Dickinson line has become the actual boundary between the two quarter sections, by recognition. That a boundary may be conclusively established in this manner is well settled (9 C. J. 244 and following pages), and the only question is whether or not the facts warranted the inference of recognition and of acquiescence in the Dickinson line as the boundary.

The uncertainty regarding the location of the true line has been indicated. The resurvey in 1884 was the result of a petition signed by inhabitants of the townships on each side of the range line. Then followed the Dickinson survey in 1886. The accuracy of the Dickinson survey has always been disputed by Charles Bond, who, in 1875, acquired, and who still owns, the east half of section twelve, a mile north of the plaintiff's land. Bond has always claimed and held possession according to the government survey, and the projection of his land across the Dickinson line to the government line has always caused a jog in the road, toward the east. Except Bond, the landowners along the line acquiesced in the Dickinson survey, the roadway was located and traveled, and improvements were established accordingly, and in some instances breaking and fences were moved west to conform to the Dickinson line.

In 1894 Samuel Evans, who has been mentioned as the owner of section nineteen, had about 100 acres of land broken on the west side of the section. The breaking extended to the Dickinson line, except that a small strip was left for half of a road. In 1897 Evans fenced his land up to the roadway. All this was done under a claim of ownership, not merely to the section line, but to the Dickinson line. The fence still stands, and from 1894 to the present time the defendant's land has been either farmed or fenced up to the Dickinson line, or rather, up to the strip left for half a roadway along the Dickinson line. Evans' possession of the land in controversy was distinctly adverse. An intention on the part of all grantees in subsequent privity with Evans to hold adverse possession, that is, possession to the Dickinson line, as distinguished from the boundary line of the section, was not established by the evi-

dence; but from 1894 to 1898, and from 1905 to the time suit was commenced in September, 1916, the possession was hostile.

At an early date, the precise year not being disclosed by the evidence, Vandling had the east side of his land broken out. His plowing extended to the Dickinson line, except that he left a small strip for the road, as Evans had done. Recently the Vandling land has been inclosed by a fence located at the west side of the road. Concerning Vandling's recognition of the Dickinson line, the court made the following finding:

"The court further finds that in 1884 the government of the United States issued a patent to Archibald Vandling, the husband of the plaintiff, Kate Vandling, and the father of the defendant, Vinnie Earhart, for the northeast quarter of section twenty-four, township twenty, south of range eighteen west of the sixth P. M., who continued to be the owner of the record title thereto up to the time of his death about two years ago, and that since his death the title has been vested in his said widow and daughter; that the said Archibald Vandling and his family were residents of Pawnee county, Kansas, practically all of the time from the date of said patent up to the date of his death and the trial of this action; that the said Vandlings had the said quarter section broken up to the line of the Dickinson survey on the west side thereof, except a narrow strip of sufficient width for one-half of a public highway, and had the same farmed by tenants for many years, and that they had personal knowledge of the breaking done by Mr. Evans in 1894, immediately east of the Dickinson survey, and the building of the fence in 1897 showing the west boundary line of the land owned by him, but at no time did the said Archibald Vandling make any attempt to recover the strip of land involved in this action or assert any claim thereto, until in the summer of 1914, when his son-in-law, B. A. Earhart, made such a demand on the said Ed. A. Griffith, and the same was promptly refused."

This court is of the opinion the conclusion of the district court that the boundary established and maintained for twenty years became, under all the circumstances stated, the actual boundary by recognition and acquiescence, was a legitimate inference.

In the brief of the plaintiff considerable space is given to the subjects of adverse possession for the statutory period of fifteen years, and agreed boundary. The decision did not rest on adverse possession, which is important here merely as bearing on the subject of recognition and acquiescence, and did not rest on any agreement respecting the boundary.

The court concluded that because the government conveyed,

by overlapping patents, more land than existed, the elder patent of the defendant's land prevailed over the junior patent of the plaintiff's land. It is not necessary to discuss the validity of this conclusion.

In an action in the district court between Reidel, who owns the quarter section adjoining the plaintiff's land on the north, and Schill, who owns the quarter section adjoining the defendant's land on the north, to recover land between the Dickinson and the government surveys, Reidel was successful. The result of that litigation was the occasion of this, and the judgment was pleaded as *res judicata* of the issues in the present action. Neither Vandling nor Griffith was a party to the other suit, and of course neither one was benefited or harmed by the judgment.

The judgment of the district court is affirmed.