Long v. Myers.

---

No. 24,047.

JOHN R. LONG, *Appellant,* v. E. S. MYERS, *Appellee.*

SYLLABUS BY THE COURT.

1. EJECTMENT—*Boundary Line—Division Fence—Acquiescence of Parties—Adverse Possession.* Where an owner of eighty acres of land sold the north forty acres of it to a grantee, and the grantor and grantee measured off the conveyed land with a rope, both intending to have an official survey made some time but they never did, and where they erected a line fence knowing that it was two feet over on the land of the grantor but did not know that the fence actually encroached from 13 feet to 99½ feet on the grantor's land, and each used and occupied their respective lands up to the fence and no further, and the grantee and his successor claimed all the land north of the fence and the grantor knew of that claim and acquiesced in it for over twenty years, it is immaterial to the respective rights of the present title holders where the true line may be; the grantee of the north forty acres and his successor held all the land north of the fence by adverse possession,

and the appellant owner of the south forty acres is barred of all claim thereto because of notice and acquiescence on the part of his grantor for a period in excess of that prescribed by the statute of limitations.

2. SAME—*No Prejudicial Error.* Other assignments of error examined, and nothing prejudicial to appellant discerned therein.

Appeal from Neosho district court; SHELBY C. BROWN, judge. Opinion filed December 9, 1922. Affirmed.

*R. B. Smith, C. M. Probst,* both of Chanute, and *John R. Long,* of Erie, for the appellant.

*H. P. Farrelly,* and *T. R. Evans,* both of Chanute, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was a lawsuit over a boundary line between the owners of two forty-acre tracts of land. The case was here before (*Long v. Myers,* 109 Kan. 278) and the judgment was then reversed because there was sufficient evidence to require the issue of fact to be submitted to a jury, while the trial court had disposed of it on demurrer to the evidence.

But it is needless to repeat the statement of facts given in our former opinion. The evidence in this trial was substantially the same as before. Testimony for the plaintiff (appellant) tended to show that the boundary line between the two forties was only tentative and intended by the respective owners to serve their convenience until an official survey could be obtained. The original settler and patentee, who conveyed one of the forties, involved testified:

"Q. You measured this land off with Mr Massey, that you sold to Mr. Massey? A. Yes, sir, measured it off with a rope.

"Q. Did you know at the time you established this whether you were getting it on the correct line or just guessing at it? A. Well, we just measured it off eighty rods square—aimed to. We didn't know whether we got it or not, we measured it with a rope. . . .

"Q. You established that as a line fence? A. Well, we calculated to get it surveyed when the surveyor came up.

"Q. You knew where the line was at that time? A. No, I didn't know."

On the other hand, however, this witness also testified:

"I sold a forty to Mr. Massey [in 1882]. . . . While Mr. Myers [Massey's grantee] owned that forty I owned the forty on the south and I farmed this land and Mr. Myers farmed his. Each of us farmed up to the fence. During these years I knew that the wire fence that is up now was on my own —was put over two feet on my ground outside of what was measured off, just

two feet over. Mr. Massey and I established a line through there, the line we established was two feet from the fence that we built. . . .

"After we measured it we put the fence two feet on my land. We used it as a line fence ever after that, he used one side and farmed it, treated it as the line, and when Myers came there 23 years ago he farmed up to the fence on the other side and the fence that was there we treated as a line fence. He farmed clear up to the fence and I had possession of all the land on the south side of the fence ever since, and had no objection, never made any claim to any of the land on the north side, and Myers has had peaceable possession for 23 years, ever since I bought it. . . . Mr. Myers and I never had any words about the line at all, I knew he was claiming up to the fence."

Defendant Myers also testified that he had always claimed all the land north of the boundary-line fence established by the patentee and Massey since he acquired the land in 1898.

Here was testimony tending to show an adverse claim to all the land north of the fence by Myers and his grantor Massey, and that the plaintiff's grantor, who owned the south forty until 1918, knew of that adverse claim and acquiesced in it. Under such a state of the testimony, the issue was clearly one of fact for a jury to determine, and plaintiff's motion for an instructed verdict was properly overruled. (*Edwards v. Fleming,* 83 Kan. 653, 112 Pac. 836; *Vandling v. Griffith,* 105 Kan. 477, 185 Pac. 23.)

In *Peterson v. Hollis,* 90 Kan. 655, 659, 136 Pac. 258, is an excerpt from 2 Enc. L. & P. 401, part of which is pertinent here:

"When one of two adjoining landowners, without actual knowledge of the true boundary line, takes possession beyond the true boundary line, with the intention to claim the line to which he takes possession as the boundary line, his possession is under a claim of title or ownership so as to render his possession of the encroachment adverse."

If it be necessary add to the matter of *notice* to the owner encroached upon to make this a complete and precise statement of the law, that was not wanting in the instant case, for here the plaintiff's grantor testified: "I knew he was claiming up to the fence."

Complaint is made of the court's instructions. These have been examined; they contain no error prejudicial to plaintiff and need no discussion.

Error is assigned because the trial court submitted certain special questions to the jury. We need only copy two of these and the jury's answers thereto to demonstrate their pertinence and controlling significance:

"Q. If defendant held this strip of land by adverse possession, did the former owner, Mr. Geo. Cosner, [patentee and plaintiff's grantor] know that the defendant was holding it adversely to him? Answer: Yes. . . . .

"Q. If you answer the preceding question in the affirmative, then state how many years Cosner acquiesced and treated said fence as the established boundary line? Answer: More than 20 years."

Another error assigned relates to the admission of oral testimony concerning official surveys of the lands involved in this action. All these surveys could establish was the true boundary line, and it never was a serious issue, and none at all now, that the disputed boundary line did not accord with the true line. Thirty-five or forty years ago Cosner and Massey knowingly set the fence two feet over on Cosner's land. That when surveyed it turned out to be considerably more than two feet is immaterial. The testimony was perhaps incompetent, but certainly it was immaterial; we cannot conceive how it could be prejudicial, as this case turned upon adverse possession on the one hand and notice and acquiescence on the other, and not at all upon the accuracy or inaccuracy of the surveys.

The other matters urged in the brief of counsel have been duly considered but they disclose no point where this judgment could or should be disturbed.

Judgment affirmed.