No. 20,594.

LOUIS L. HINNEN AND EDWIN L. HINNEN, *Appellees*, V. NOAH
ARTZ, *Appellant*.

SYLLABUS BY THE COURT.

1. EJECTMENT—*Misdescription of Property—Amendment to Petition—
   No Error.* No error is committed in allowing a petition in ejectment
   to be amended by changing the description of the property sought to
   be recovered, where no contention is made that the bar of the statute
   of limitations has fallen between the beginning of the action and the
   making of the amendment.

2. WILL—*Reference to Property Devised—Sufficiently Definite.* Where a
   will, after disposing of the southwest quarter of the southwest quar-
   ter and the northwest quarter of the northwest quarter of a section of
   land owned by the testator, in devising the remainder of the section
   speaks of each of these tracts as "the 40 acres" already so disposed of,
   although in fact neither contains quite that area, such reference does
   not justify an inference that by the first devise anything was in-
   tended to pass excepting the two quarter quarters described, as laid
   out by the government surveyors.

3. WILL—*Construction by Probate Court—Evidence.* The admission of
   evidence of the construction of a will by the probate court held to be
   nonprejudicial, because the interpretation in support of which it was
   offered was correct as a matter of law.

4. EJECTMENT — *Boundaries of Land — Recitals in Deeds — Evidence.*
   Where the owner of a tract of land claims that he and his grantors
   acquired an adjoining strip by a boundary agreement and by adverse
   possession, no error is committed against him in admitting in evidence
   the deeds through which he claims, and which make no reference to
   such strip.

5. SAME—*Tax Rolls—Evidence.* In such situation no error is com-
   mitted by admitting evidence that the property continued to be carried
   on the tax rolls by the original descriptions.

6. TRIAL—*Evidence—Conclusion of Witness.* The overruling of .objec-
   tions to testimony on the ground of its stating the mere conclusions of
   the witness held not prejudicial where the facts were fully developed.

7. EJECTMENT—*Adverse Possession—Evidence.* The evidence held not
   to show conclusively that the defendant had acquired title by a
   boundary agreement or adverse possession.

8. SAME. Instructions requested regarding adverse possession held to
   have been properly refused.

9. SAME—*Instructions—No Error.* The instructions ·given held not to
   afford ground of reversal.

Appeal from Butler district court; ALLISON T. AYRES, judge. Opinion filed January 6, 1917. Affirmed.

*George J. Benson,* and *T. A. Kramer,* both of El Dorado, for the appellant.

*H. W. Schumacher, G. P. Aikman,* and *C. L. Aikman,* all of El Dorado, for the appellees.

The opinion of the court was delivered by

MASON, J.: Louis L. Hinnen and Edwin L. Hinnen brought ejectment against Noah Artz for a strip of land containing about two acres, lying along the east side of the southwest quarter of the southwest quarter of section 18, in township 24, of range 4 east. The plaintiffs recovered and the defendant appeals.

1. The original petition, filed May 12, 1915, in describing the tract in controversy by metes and bounds, gave as the place of beginning the northeast corner of the southeast quarter of the southwest quarter of the section. On June 25, 1915, the plaintiffs were allowed to amend by substituting the northwest corner for the northeast, as the starting point. Objection is made to the allowance of the amendment on the ground that it substantially changed the cause of action, because the amended petition claimed an entirely different tract from that originally described. The change could not have prejudiced the defendant unless the bar of the statute of limitations had fallen after the action was begun and before the amendment was made. While the defendant claimed title by adverse possession no contention was made, nor could any have been justified under the evidence, that the fifteen-year period had expired between May 12 and June 25, 1915. Therefore no error could have been committed in allowing the amendment. (*Blair v. Craddock,* 87 Kan. 102, 123 Pac. 862.)

2. The whole of the section above described was owned by Wartman F. Joseph at the time of his death. By his will he left one tract to several grandchildren, under whom the defendant claims; another to other devisees; and the remainder of the section to relatives through whom the plaintiffs derive title. The defendant maintains that the devise to his grantors included the strip now in dispute; but if it did not, that he

acquired title by a subsequent boundary agreement; and in any event that he can not be dispossessed because he and his grantors have held the land by adverse possession for more than fifteen years. The plaintiffs deny the boundary agreement and the adverse possession, and contend that their predecessors in interest took the property under the will. The two tracts which were separately disposed of in the will were described in the clause by which they were devised as the southwest quarter of the southwest quarter of section 18 and the northwest quarter of the northwest quarter of that section. In the succeeding clause the testator provided for the disposition of the whole section, "less the forty acres hereinbefore willed" to the devisees under whom the defendant claims, and "the 40 acres willed" to the other devisees. The southwest quarter of the southwest quarter, according to the government survey, contains but 36.72 acres. The defendant maintains that when read as a whole the portions of the will already referred to show a purpose to give his grantors not simply the tract designated by the survey as the southwest quarter of the southwest quarter, but forty acres of land. The exact language of the will so far as it throws light upon this, matter is as follows:

"To my grandchildren that are the children of my son, William I. Joseph, living at the time of my death, the southwest quarter of the southwest quarter of section 18, township 24, south of range 4, east, in Butler county, Kansas, in fee simple, share and share alike, to be sold and the proceeds of said sale thus equally divided.

"To my grandchildren that are the children of my son Moses N. Joseph, living at the time of my death, and Ella Garrison their half sister, if she be living at the time of my death, the northwest quarter of the northwest quarter of section 18, township 24, south of range 4 east in Butler county, Kansas, to be sold and the proceeds of said sale to be divided equally between said grandchildren. To my son, James' Joseph and his wife Nancy Joseph, my grandson W. W. Kemper and his wife Laura Kemper, all of section 18, in township 24, south, range 4 east in Butler county, Kansas, less the 40 acres hereinbefore willed to the children of William I. Joseph, and the 40 acres willed to the children of Moses N. Joseph and to Ella Garrison. Said part of section 18 in township 24 south of range 4 east in Butler county, Kansas, consisting of about 560 acres, to be divided into two parts equal in value and including the improvements, one of said parts I hereby bequeath to my son James Joseph and his wife, Nancy Joseph, and the other to W. W. Kemper and his wife, Laura Kemper."

We think it clear that by the first and second clauses of the part of the will quoted the testator intended to dispose of the southwest quarter of the southwest quarter and the northwest quarter of the northwest quarter of the section as those tracts were laid out by the government surveyors, irrespective of their precise acreage. The subsequent reference to each of the two tracts already disposed of as "the 40 acres" does not suggest a purpose to qualify the description previously employed, but indicates that the testator chose the quoted words as a convenient and readily understood phrase by which to designate the legal subdivisions which had already been accurately described. A conveyance of land by the usual subdivisions of sections is presumed to refer to the public surveys of the United States. (*Prentiss v. Brewer*, 17 Wis. 635.) Here there is nothing to overcome the presumption. A supposition that when the testator wrote "the southwest quarter of the southwest quarter" of section 18 he had in mind a mathematical one-fourth of the quarter-section, if it were otherwise tenable, would not relieve any supposed inconsistency, for such a fraction would not contain forty acres. Therefore the grantors of the plaintiffs received under the will all the section excepting the two quarter quarters, and thereby acquired title to the tract in controversy. The description of the remainder of the section as containing "about" 560 acres does not militate against this construction. The testator doubtless had in mind that an ordinary section of land, less two ordinary "forties" would contain approximately that acreage. The actual area of the section, less the two quarter quarters was 554.88 acres, according to the government survey. The omission to use the word "about" in referring to each of the tracts previously disposed of as "the 40 acres" is readily accounted for. The testator was not attempting to give a precise description. That had already been done. He was merely using a general phrase that indicated with abundant clearness the tracts he referred to.

3. The defendant complains of the admission in evidence of the record of proceedings in the probate court by which the executors sought a construction of the will. Assuming that the evidence was incompetent it was not prejudicial. It is said that the jury was given to understand that the probate

court had decided that the will gave the strip in controversy to
the grantors of the plaintiffs, whereas that court had no juris-
diction to make such a decision, had not in fact made it, and
could not in any event have bound the defendant by it. As we
hold that the construction of the will adopted by the plaintiffs
is correct as a matter of law, the admission of incompetent evi-
dence in support of that view could not constitute material
error.

4. The defendant also complains of the admission in evi-
dence of the record of the deeds under which he derived title,
and which described the land conveyed as the southwest quar-
ter of the southwest quarter of section 18. He contends that the
fact that the deeds described only this tract might have been re-
garded by the jury as an argument against his claim to have ac-
quired title by a boundary agreement and by adverse posses-
sion, whereas it had no legitimate tendency in that direction, be
cause one who has extended his boundaries by agreement or
adverse possession customarily transfers his title to the land,
including the accession thereto, by a deed describing only the
tract to which he has a paper title. Granting the existence
of such a custom, we think it was proper that the facts con-
cerning the chain of title should all be shown. If the deeds
had undertaken to convey the added strip it would have been
a circumstance tending to support the theory of a continuous
claim of title. The negative evidence afforded by the omission
of the deeds to refer to the strip was not conclusive against
the defendant, but was proper to be considered in connection
with other circumstances in determining the issue, and the
court so instructed the jury. (2 C. J. 177; 1 Ency. of Ev. 679;
Ency of Ev. 1915 Supp. 131.)

5. A similar question is raised by an objection to evidence
that the property claimed by the defendant was carried on the
tax rolls as the southwest quarter of the southwest quarter of
the section, containing thirty-seven acres, and that that
claimed by the plaintiffs was carried as the ordinary legal sub-
divisions, containing 560 acres. It is argued that the owners
of the land are not responsible for the descriptions appearing
on the tax rolls. They, of course, are not concluded by them,
but the circumstance that one who claims an accession by a
boundary agreement and by adverse possession suffers the

taxes thereon to be charged to his neighbor is not wholly without bearing upon the extent of his claims. (See 2 C. J. 271, 273, 275.)

6. Various objections are urged to portions of the testimony as giving conclusions of the witnesses. Some of the questions and answers were, perhaps, technically objectionable on that ground. But upon the whole inquiry the facts were developed with such fullness that no prejudice could have resulted. (*Insurance Office v. Woolen-mill Co.*, 72 Kan. 41, 82 Pac. 513.)

7. It is contended that a demurrer to the plaintiffs' evidence should have been sustained on the theory that it showed that a boundary line in accordance with the defendant's claim had been established by agreement and acquiescence, and that adverse possession had been maintained for more than fifteen years. The plaintiff's witnesses testified that in 1895 or 1896 a fence had been built by one of the plaintiffs' grantors along the line now claimed as the boundary by the defendant; that one of the defendant's grantors afterwards paid half its cost; that the builder placed it on the line as near as he knew its location; that it remained in its original position until 1915; and that the true line was located by a survey in 1912. Their testimony did not conclusively prove, even if it had any tendency to show, that there was an agreement that the fence should constitute the boundary between the two tracts, or that either party regarded it as indicating the dividing line unless it actually coincided with that between the southwest quarter and the southeast quarter of the quarter section. The demurrer to the evidence was therefore properly overruled. The contention is also made that a motion for a peremptory instruction for the defendant should have been sustained on the same grounds. Witnesses for the defendant testified to an agreement concerning the boundary, and to facts the existence of which would probably have constituted adverse possession. But the jury were not bound to find in accordance with this testimony. The defendant insists that in virtue of the reference in the will to the forty acres devised to his grantors, he and they from the first claimed to own beyond the east line of the southwest quarter of the southwest quarter, and occupied the land in dispute under that claim. But the evidence does not conclusively establish this. Of course a possession held up to the fence

in the belief that it followed the surveyor's line would
not be adverse (*Winters v. Bloom,* 96 Kan. 443, 151 Pac. 1109;
4 R. C. L. 128) nor would acquiescence in its maintenance on
that supposition create an estoppel (4 R. C. L. 130).

8. Complaint is made of the refusal of an instruction to
the effect that the defendant was entitled to a verdict if he
and his grantors had been in possession of the tract in con-
troversy for fifteen years prior to the beginning of the ac-
tion, claiming the right to own it.  The instruction was de-
fective in failing to enumerate the other elements necessary
to make the holding adverse, such as openness, notoriety and
hostility.  The court refused to give a requested instruction
to the effect that one in the possession of real estate and using
it as his own and keeping the rents and profits is presumed
to claim it as his own unless it is shown that he is holding it
as a tenant or under authority of someone else or in some
other way than as owner.  The instruction was not adapted
to aid the jury in the solution of the questions submitted to
them.

9. An instruction was given to the effect that if the fence
referred to was built by one of the owners of the southeast
quarter of the southwest quarter for his own personal use,
not intending that it was to be a line fence, the possession
of the tract in controversy by the owners of the southwest
quarter would not be adverse without their having made
known to the owners of the southeast quarter "their inten-
tion of holding said land to the boundary of said fence,
and that their possession thereto was open, notorious, peace-
able and adverse to said owners."  It is argued that this is
in conflict with the rule thus stated in *Peterson v. Hollis,* 90
Kan. 655, 136 Pac. 258:

"Where a landowner holds up to a fence, with the purpose of claim-
ing it as his boundary irrespective of whether or not it corresponds
with the true line, and does nothing inconsistent with this intention,
his occupancy is adverse, even although the adjoining owner supposes
he intends to claim only what he originally owned." (Syl. ¶ 2.)

We do not regard the instruction as furnishing ground for
reversal.  Its fair interpretation seems to be, not that the
defendant in order to avail himself of the statute of limita-
tions was required to show that actual knowledge was brought

to the plaintiffs (or their grantors) of his claim (or that of his grantors) of ownership up to the fence, but that the occupancy of the disputed tract must have been of such character as to import notice of such claim. This seems to follow from a prior instruction which was given in these words:

"In order to show that the defendant and those from whom he purchased the real estate have claimed to be the owner of the real estate and have claimed a right to it, it is not necessary to show that they in express words said to anyone that they claimed the real estate or that it was their's, but if they were in possession of the real estate and farmed it and kept and retained the crops and rents from it and treated it as their own without paying rents to anyone else or without recognizing or admitting anyone else had any rights in and to said land, it is sufficient to show an intention on their part to claim the real estate as their own."

Complaint is made of various instructions regarding the effect of the will. As we have concluded that as a matter of law the will gave the defendant's grantors title to only the legal subdivision known as the southwest quarter of the southwest quarter it is unnecessary to discuss any rulings relating to that matter.

The judgment is affirmed.