No. 29,054.

NANNIE E. HOWELL, *Appellee,* v. MARY E. KELLY et al., *Appellants.*

(283 Pac. 500.)

Opinion filed January 11, 1930.

*J. H. Brady* and *T. F. Railsback,* both of Kansas City, for the appellants.
*Justus N. Baird* and *Paul H. Ditzen,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was a lawsuit over a boundary line between adjoining landowners who derived their respective titles from a common source. The facts leading up to this controversy are substantially to this effect:

For many years prior to 1903 one Barney Malloy held title to a rectangular tract of land containing 21.037 acres in the western outskirts of Kansas City, which his deed erroneously set down as 21.37 acres. In 1903 Barney's wife obtained a divorce from him,

and the court awarded her 9 acres off the west side of the property. Shortly thereafter Barney sold the remaining portion of his land to this plaintiff and her husband. Their deed of conveyance erroneously called for 12.37 acres when all their grantor had to convey was 12.037 acres.

In 1904 the Howells, plaintiff and husband, desired to erect a fence between their property and that of Mrs. Barney Malloy, mother of defendant Mary Kelly. They hired one Lasley, a surveyor, to find the division line between the 9 acres and the 12.037 acres, and the Howells built a north-and-south fence halfway across the tract. Mrs. Malloy extended the fence from the halfway point to the north line of the tract. At the suggestion or request of the Howells, Mrs. Malloy paid half the surveyor's charges, $2.50. Mrs. Malloy's house was about 50 feet west of the fence. For many years the owners of these two tracts conducted them as small fruit farms, and each maintained their respective portions of the division fence. In time Mrs. Malloy conveyed her 9 acres to her daughter, Mrs. Kelly, defendant herein. Mrs. Malloy died some years ago, as did Mr. Howell, husband of plaintiff.

In 1928 Mrs. Howell determined to plat her tract into building lots, and to that end she employed a surveyor, George Hazen, with instructions to measure off Mrs. Kelly's nine acres, leave one foot of land next thereto for reasons not here pertinent, plat a north-and-south road or street 19 feet in width next thereto and plat the remainder of her land into a score of sizeable building lots.

In discharging the duties of his employment this surveyor discovered that while the location of the fence erected in 1904 was correct at its southern extremity it was 16 feet too far west at its northern end, so that Mrs. Kelly had title to a wedge-shaped tract of land immediately east of the fence, 16 feet wide at its north end and tapering to zero at its southern end. Neither Mrs. Kelly nor her mother had been in possession of this small portion since the erection of the fence 25 years ago. However, while the surveyor was engaged in the work of surveying and platting the Howell property, and being misled by the error in the Howell deed which called for 12.37 acres instead of 12.037 acres, he had a conversation with Mrs. Kelly in which she told him that the fence had been set by a survey and agreement with her father and mother as the dividing line regardless of his [Hazen's] stakes or the lines of his survey. He testified:

"Q. Is that the reason why you established the west line of Howell Gardens to be this line fence? A. Yes, sir. . . .

"Q. Was anything said that she wanted that to remain the line? A. She said that was the line, had been the line for about 30 years when the estate was divided. It could not be changed."

Mrs. Kelly admitted she had held a conversation with Surveyor Hazen while he was platting the Howell land, but denied that she had told him the fence had been agreed upon as a division line. She did admit, however, that she knew the Howell property was being platted into building lots, that a road had been laid out along the fence to serve those lots, and that she saw a house being built on one of the lots in conformity with the road next the boundary fence, and that she made no protest.

Mrs. Howell admitted in her testimony that she did not intend to claim more land than she actually owned, but that she did claim and had always intended to claim up to the so-called division fence.

The trial court made a general finding for the plaintiff, Mrs. Howell, and judgment was entered accordingly.

Defendants appeal, suggesting that the record merely presents this question for determination:

"1. May an unintentional encroachment, however long continued, through mistake and inadvertence, and ignorance of the true line, constitute such hostile and adverse possession as will ripen into title by prescription?"

In the solution of this legal question counsel for appellants submit a comprehensive brief which would be bound to convince this court—if we were not already thoroughly committed on it. However, the question has been settled in the negative by many decisions. (*Kinne v. Waggoner,* 108 Kan. 814, 197 Pac. 195, and citations; *Story v. Brown County,* 116 Kan. 300, 226 Pac. 772.)

But it does not appear that the legal point invoked by appellants is sufficient to control this appeal. We have the testimony of Surveyor Hazen to the effect that defendant asserted that the fence had long been agreed upon as the boundary line, that it fixed the boundary line regardless of his stakes. Doubtless at the time she made that statement she did not know she was speaking against her own interest; she did not then know she had title to a wedge-shaped fraction of an acre lying east of the fence. We are not forgetting that Mrs. Kelly denied making those statements prejudicial to her interest which was testified to by Surveyor Hazen; but it was the function of the trial court to decide whether Hazen or Mrs. Kelly

was telling the truth about the substance of that conversation. The parties to the agreement that the fence should be the boundary line were all dead except Mrs. Howell, so her lips were sealed on that point, but the circumstances were evidential (*Kinne v. Waggoner*, supra, p. 818), not sufficient in themselves, of course, but having a corroborative bearing on the assertions and claims of Mrs. Kelly made to Surveyor Hazen.

Another matter to which the trial court doubtless accorded due significance was the fact that Mrs. Kelly knew that Mrs. Howell's surveyor had acquiesced in defendant's assertion that the fence was the settled boundary line and knew that he had platted the road and the building lots accordingly, and that one or more of the lots affected by the outcome of this lawsuit had been purchased and a home erected thereon in reliance on the plat. While those things were transpiring Mrs. Kelly was silent. Not only silent, but she had partly caused them to happen. Although she did not then know her title called for some of that land, she did know that the platting, the selling, and the building had been done in accordance with her assertion about the boundary line and in deference thereto. This, as it seems to a majority of this court, makes altogether too strong a case of estoppel against Mrs. Kelly to permit the judgment against her to be disturbed.

The judgment is affirmed.

JOHNSTON, C. J., and HUTCHISON and JOCHEMS, JJ., concurring.

BURCH, MARSHALL and HARVEY, JJ., dissenting.