No. 32,010

Daniel A. Baker, *Appellant*, v. G. W. Jones et al., *Appellees.*

(40 P. 2d 346)

Opinion filed January 26, 1935.

*J. B. Wilson,* of Lawrence, for the appellant.

*George K. Melvin* and *R. E. Melvin,* both of Lawrence, for the appellees.

The opinion of the court was delivered by

Burch, J.: The action was one of ejectment, to recover a lot, according to plat number, the east 29 feet of which were occupied by another. The real question was location of boundary between two lots. Plaintiff was defeated, and appeals.

In administration of Courtney's estate, the administrator sold to Baker, the plaintiff, four lots, numbered from west to east on the plat of the subdivision, 27, 28, 29 and 30. The next lot to the east is 31. Originally Courtney owned that lot. Before his death Courtney deeded lot 31 to Smith. Smith deeded to Jones, and Jones contracted to sell to Wilderson, who was in possession when the action was commenced. Lot lines were not marked on the ground, and Baker procured surveys to be made. The surveys disclosed that the true line between lots 30 and 31 ran through Wilderson's house.

Before Courtney deeded to Smith, all the lots constituted a small field used for farming and gardening. Courtney had reared Smith, Smith was about to get married, and Courtney gave lot 31 to Smith. Smith dug a cellar, and subsequently erected the dwelling house, with funds obtained from Jones. In fact, Smith deeded to Jones, and Jones gave Smith a contract to reconvey when the money was repaid. The contract was not recorded, Smith was unable to pay Jones, and Jones "took the property."

The lots were about an acre in size. How it happened the cellar was located where it was is not explained. When the house was to

be built, the excavation was too large, and the foundation was erected inside the excavation.

Elliott was the contractor who built the house. He testified the contract to build the house was made with Smith. A few days before the contract was made, he had a conversation with Smith and Courtney touching the subject of placing the house where the excavation had been made. The day before Elliott commenced work he was present at a conversation between Smith and Courtney touching the subject of location of the house. Elliott built the house in twenty days and turned it over to Smith. The house cost $1,-650. Elliott testified Smith was there most all the time. Courtney would come over and look around to see how the building was progressing, and was around and over the premises during the entire time the house was building. The painter who painted the house testified Courtney and Smith were there about every day. A carpenter who helped build the house said Courtney was around at least once a day and seemed interested in the building.

When Smith began his improvements there was a dead furrow in the field 29 feet west of the west line of lot 31. As a part of the improvement, a well was dug in the twenty-nine foot strip. After the improvements were completed Courtney used the land west of the furrow, and Smith used the land east of the furrow.

Thus far nothing has been said about locating the house with reference to the dead furrow as the west boundary of lot 31, conveyed by Courtney's deed to Smith. The conversations between Elliott and Courtney and Smith have not been given. The subject of the conversations has merely been identified to show Courtney's knowledge of what was going on.

Baker contends we must start with the presumptions enumerated in the second paragraph of the syllabus of the decision in *Edwards v. Fleming*, 83 Kan. 653, 112 Pac. 836, which reads:

"Among the presumptions which usually obtain with respect to the possession of real estate are these: (1) It is presumed that the possession is in subordination to the true title; (2) where one enters into possession under a deed it is presumed that he claims only the title given him by his deed and that his possession is restricted to the premises granted."

Presumptions are sometimes helpful in boundary cases, when we are in a state of ignorance regarding the facts. The law, however, is realistic, and when we gain knowledge of facts presumptions have no function to perform. The facts of this case are clear. Courtney

made a deed to Smith of an acre of land in a plowed field. The boundaries of the acre were not marked. Smith went out in the field, assumed dominion over part of it, and proceeded to erect improvements at a cost of what to him was a large sum of borrowed money, since he was never able to repay. The improvements were of a lasting kind, indicating intention of permanent dominion, and Smith moved in. Courtney saw all this done, and submitted to what was done. Without any statute of limitations to help Smith, Courtney would not now be allowed to claim the boundary of his land was east of where the house was built and the well was dug. Baker took nothing from Courtney's administrator which Courtney could not have recovered from Smith.

This is not a case like many in the books, involving mutual mistake as to boundary, intention on one side to occupy only to the true boundary, wherever it may be, and acquiescence on the other side. It is a case involving intention by Smith to occupy permanently a definite part of the field, under circumstances open to but one interpretation, namely: That it was Courtney's intention Smith should do so. There was mutual assent manifested by conduct. That constitutes an agreement, and on the facts thus far stated the boundary between lots 30 and 31 was fixed, by agreement of parties, at least far enough toward the west to permit Smith to build where he did build.

The court returned the following finding of fact:

"There was an understanding and agreement between Courtney and Smith that the line between their respective tracts of land was where the dead furrow lay, or twenty-nine feet west of the east line of lot 30."

A few days before Elliott contracted with Smith to build the house Courtney and Smith told Elliott to place the house where the excavation was already made. The day before Elliott commenced work he was present at a conversation between Courtney and Smith, which Elliott related as follows:

"Mr. Courtney and Mr. Smith were standing there together when I was over there and just before I started to build on it. They had a furrow plowed through there, one plowed one way and one the other, making a ditch straight from north to south, and Mr. Courtney and Mr. Smith discussed that was the line. The property east of it belonged to Mr. Smith, which Mr. Courtney gave him. That was five or six feet west of the well, and makes about twenty-five feet west of where the house stands."

After the cellar was dug, and before Smith made his financial arrangement with Jones, Jones inspected the property. He testified

Courtney pointed out the line. There was corn west of the dead furrow. Courtney told Jones the property where the corn was belonged to Courtney, and what was on the east side he had given Smith, up to the furrow.

Baker minimizes the conversation between Courtney and Smith in Elliott's presence, and contends the fact Courtney and Smith "discussed" the furrow as being the line did not tend to prove an agreement the furrow was the line. The court is of the opinion the entire conversation left no room for doubt the boundary was an agreed boundary.

Courtney and Smith and Elliott were at the site of the house immediately to be erected. There was the furrow, and boundary was a subject of discussion. Courtney and Smith did not merely talk about the furrow being the line. They "discussed that was the line." If, by the word "discussed," Elliott meant Courtney and Smith talked about the furrow as the line, then the furrow as the line was a closed subject between them. The word "discussed" was, however, merely Elliott's idiom for what in legal phrase would be "stated," and the whole conversation was, in effect, that they stated the furrow was the line, and the property east of it, which Courtney had given to Smith, belonged to Smith. That could not be, unless what Courtney and Smith were saying was the result of present or previous agreement. What Courtney told Jones was equally indicative that Courtney and Smith had agreed the furrow was the line.

Objection was made to proof of the conversations just considered: They contradicted the deed, they were hearsay, and Courtney's declaration after parting with lot 31 could not enlarge or otherwise affect estate. The objections were properly overruled.

In decision after decision, cases have been collated up to date, holding that boundary may be proved by parol evidence, and it is not necessary to extend the list. The relation by Elliott of what Courtney and Smith said about boundary was not hearsay. The dead furrow bounded Courtney's land, as well as Smith's. Courtney's declaration to Jones was against Courtney's interest, was provable against Courtney and, dropping into the very expressive vernacular, Baker stands in Courtney's shoes.

There is nothing else in the case which would affect the result. The finding of the court relating to agreed boundary was abundantly sustained by parol evidence, properly admitted.

The judgment of the district court is affirmed.

THIELE, J., not sitting.