No. 33,897

THEODORE STEINBRUCK, *Appellee,* v. ALICE BABB, *Appellant.*

(84 P. 2d 907)

Opinion filed December 10, 1938.

*U. S. Weary,* of Junction City, *W. H. Carpenter* and *W. R. Carpenter,* both of Marion, for the appellant.

*James V. Humphrey* and *Arthur S. Humphrey,* both of Junction City, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This was a controversy between two farmers over a line fence. One asked for an injunction to restrain the other and her tenants from tearing down or in any way interfering with the fence of the plaintiff and from trespassing upon any of the land of the plaintiff.

The defendant, in her answer, admitted that her tenants did tear down the fence described in plaintiff's petition and threatened to tear down any other fences the plaintiff might build upon her land, describing the land owned by her, and she further alleged that a recent survey showed that the original partition fence was a few feet west of the east line of the land conveyed to the plaintiff. Then she described this deviation between the original fence and the surveyed line in detail, showing it to be a narrow strip varying in width from eight feet in width at the north end to 2.3 feet in width at the south end, on the north bank of the Republican river, which amounted to something less than a half acre, which she alleged she owned irrespective of where the actual legal line might be as surveyed, because of her having been in open, exclusive, notorious, continuous and adverse possession of the narrow strip since 1918. She therefore prayed that no injunction be allowed the plaintiff and that her title to this narrow strip be quieted. The plaintiff, in his reply, admitted the description of the narrow strip to be correct, but denied all other allegations of the answer.

After hearing the evidence the trial court made findings of fact and a conclusion of law. The first finding described the land conveyed by Edward E. Hill, the admitted original owner of all the land owned by both parties, on April 23, 1907, to the plaintiff. The second finding described the land the same general owner, Hill, on July 1, 1908, conveyed to John J. Luthi, it being directly east of that con-

veyed to the plaintiff. The third finding shows the conveyance by Luthi in 1917 to S. A. Bardwell, and by Bardwell, on March 18, 1918, to the defendant's husband, now deceased. The fourth finding is as follows:

"Between April 23, 1907, and July 1, 1908, the plaintiff and Edward E. Hill, each owned a number of horses, and in order to keep them apart, built a double fence along the north part of plaintiff's land, which consisted of a fence on plaintiff's land and about three feet west of his east line, and one on the land of Hill about three feet east of his west line, and the plaintiff continued said fence south to the Republican river, keeping the same approximately three feet west of plaintiff's east line."

The fifth finding is to the effect that before Hill conveyed the east farm to Luthi a survey was made locating the boundary line about midway between the two fences, and markers were placed at the north and south, the former being there continuously ever since, and the latter being in place a part of the time. The sixth finding is that Luthi, Bardwell and the persons who have occupied the defendant's premises supposed that the fence constructed by the plaintiff and extending to the river was the line between the two farms. The seventh finding is as follows:

"The said John Luthi and the defendant and all of the persons who have been the owners of defendant's premises since the original conveyance thereof from Hill have occupied the land as described in the deed from Hill to Luthi, and also the narrow strip of plaintiff's land lying immediately east of the fence by him constructed and running south to the Republican river. This occupation has been open, notorious and exclusive, and has been under the mistaken belief that said fence constituted the true boundary between the plaintiff's and the defendant's premises."

The eighth finding is that another survey has been regularly made since the commencement of this action, which conforms to the original survey and established that all of the disputed tract was a part of the land conveyed by Hill to the plaintiff. The ninth finding is concerning the tearing down of the fence built by the plaintiff, as admitted in the answer. The tenth and last finding is as follows:

"There has never been any agreement between the plaintiff and the successive owners of this land that the fence constructed by the plaintiff should be taken as the boundary line between the premises of the plaintiff and the defendant."

The one conclusion of law made by the trial court is as follows:

"Plaintiff should be allowed a decree permanently enjoining the defendant from tearing down or in any way interfering with the fence now on the east line of plaintiff's premises, or that may thereafter be erected thereon. And

the defendant should be adjudged to be without any right, interest or estate in any portion of the premises described in finding No. 1 [land conveyed to plaintiff]."

After hearing and overruling motions for a new trial and to set aside and vacate the findings of fact and the conclusion of law, the trial court rendered judgment in favor of the plaintiff enjoining the defendant from tearing down or interfering with plaintiff's fence and holding that defendant is without any right, interest or estate in any portion of plaintiff's land. From this judgment the defendant appeals, specifying as errors the failure of the trial court to vacate the findings and conclusion, in not finding the defendant had adverse possession of the strip of land for more than fifteen years, and quieting her title thereto, and in overruling defendant's motions to vacate the findings of fact and for a new trial.

On this appeal it is admitted by the appellant that the narrow strip of land in controversy is embraced in the description contained in plaintiff's deed. Therefore, the sole question here involved is whether the possession of this strip of land by the defendant was adverse. The trial court found that the defendant's occupancy thereof had been "open, notorious and exclusive." Did the evidence and the legal inferences warrant a finding and conclusion that such occupancy and possession was adverse? Or, in other words, did the finding of the trial court that such occupation was open, notorious and exclusive carry with it a necessary finding or conclusion that it was adverse? The theory of the appellant is fully expressed in her third question involved, which is as follows:

"3. Whether an owner of land who knows that an apparent line fence is three feet or so on his own land can successfully defend against a claim of adverse possession against one who has been in open, notorious and exclusive possession of the strip of land for twenty-nine years claiming to own the same, merely because said person supposed the fence to be on the true lines, and held the mistaken belief that the fence on the apparent boundary line constituted the true boundary line."

Appellant did not request an additional finding of adverse possession after the findings omitting it were made. The request was that the findings as made be vacated. Great reliance is placed upon the acquiescence of the plaintiff and his failure to claim the strip of land belonging to him. The argument of appellant is based largely upon such acquiescence of the plaintiff and the mistaken belief of the defendant that the fence constituted the true boundary. Nothing is said in the findings about the extent of such acquiescence on

the part of the plaintiff or the intent of the defendant under the mistaken belief as to the true boundary. These matters were involved in the issues and were either proved or not proved, "that defendant is now the owner of said 250-acre tract, and that she and her deceased husband have been in open, exclusive, notorious, continuous and adverse possession of all of said land east of said original partition line fence, since the year 1918, claiming to own the title thereto irrespective of where the actual legal surveyed line might be."

The burden was upon the defendant except it might shift to the plaintiff for explanation after the establishment of adverse possession.

Reference is made by the appellant to the holdings in two Kansas cases where there was a mistaken belief as to the boundary line and the encroachment was held to be adverse. They are *Peterson v. Hollis*, 90 Kan. 655, 136 Pac. 258, and *Long v. Myers*, 112 Kan. 395, 211 Pac. 109, but both of them were where the owners entered into an agreement to use the fence in one case, and the hedge in another, as the boundary line. The court in the case at bar specifically found in finding No. 10 that there never was any agreement in this case that the fence constructed should be the boundary line. So we cannot apply the ruling in these cases to the case at bar.

Counsel for appellant cite in absolute fairness several Kansas decisions holding contrary to the view they claim should be applied in this case, thus recognizing a diversity of opinion as to adverse possession and intention of party holding occupation to a mistaken boundary line, and they submit that there are only two points left in this case, namely, "Did defendant and her predecessors in title claim to own the strip of land in question?" and "Was that claim the kind that was hostile?" These questions are certainly in point. Counsel add that the trial court "did not find that otherwise defendant and her parties did not claim to own the property. They did claim to own it." As stated before, intention and adverse or hostile possession were within the issues and were issues made by the defendant requiring proof sufficient to justify findings thereon, and without such findings or conclusion the appellant's case would seem to be lacking. Sometimes findings of fact are placed in the conclusions of law, but if the conclusion of law in this case is considered in that connection it would amount to negative findings thereon. Both such matters needed affirmative findings to sustain the contention of the appellant.

Appellant cites the following from 2 C. J. S. 634:

"The generally accepted view is that possession under absolute claim of title up to a supposed boundary is adverse, although the claimant's possession originated in a mistaken belief that the supposed boundary was the true boundary."

In the same volume, under the same title, but on page 637, stress is placed on the necessity of intention of the possessors as follows:

"The claim must be as broad as the possession, and it is essential to acquisition of prescriptive title under this doctrine that the possessor have an absolute and not a conditional intent to claim title to all the land within a specified boundary, whether such boundary shall or shall not eventually prove to be correct, and that the true owner have notice of such hostile intent, although oral declarations of hostility are not essential where the adverse character of the possession is shown by visible, physical facts."

It will thus be observed that mistaken belief with an absolute claim of title may make the possession adverse, but that claim of title must be absolute and not conditional, and the true owner must have notice of the hostile intent. The findings in the case at bar contain none of these elements except possession and mistaken belief. There is nothing in them about claim, intent or notice of hostile intent. The record shows some evidence about claim, and some reasonable inferences about acquiescence or apparent notice, but the court may not have given such testimony and inferences sufficient credence to support a finding where the record also shows the positive language of the deeds, the presence of boundary-line markers and the setting of telephone poles to the contrary.

It was said in *Hinnen v. Artz,* 99 Kan. 579, 163 Pac. 141, that—

"Of course, a possession held up to the fence in the belief that it followed the surveyor's line would not be adverse (*Winters v. Bloom,* 96 Kan. 443, 151 Pac. 1109; 4 R. C. L. 128), nor would acquiescence in its maintenance on that supposition create an estoppel (4 R. C. L. 130)." (p. 584.)

In *Park Construction R. & S. Corp. v. Emmett,* 145 Kan. 604, 66 P. 2d 379, it was said:

"For instance, one regarding the fence as the boundary line, when later it was determined it was not on the line, cannot claim his possession and use of the extra space between the true line and the fence was adverse or hostile. The possession must be with the intention of being adverse to the real owner." (p. 610.)

In *Wiburg v. Stevenson,* 134 Kan. 530, 7 P. 2d 512, it was held:

"In an action involving the title to a strip of land between a boundary line and a fence, in which plaintiff claimed title to the strip by adverse possession, a finding by the court that he did not have adverse possession of the tract in

question is not inconsistent with a finding that the occupants of the property occupied the same to the fence. Adverse possession, to ripen into title, means more than mere occupancy." (Syl.)

In *Edwards v. Fleming*, 83 Kan. 653, 112 Pac. 836, it was held:

"The real test as to whether or not possession of real estate beyond the true boundary line will be held adverse is the intention with which the party takes and holds the possession. It is not merely the existence of a mistake, but the presence or absence of the requisite intention to claim title, that fixes the character of the entry and determines whether the possession is adverse." (Syl. ¶ 1.)

It was further held in the case last cited that if—

". . . there is a clear intention to claim the land up to the fence, whether it be the correct boundary or not, the possession will be held adverse." (Syl. ¶ 3.)

The findings in this case are very different from the one at bar, but it recognizes and discusses in the opinion the conflict in the authorities generally respecting the effect of possession of real property taken and held under a mistake as to the true location of the boundary line, concluding that—

" 'It is not merely the existence of a mistake, but the presence or absence of the requisite intention to claim title, that fixes the character of the entry and determines the question of disseizin.' " (p. 659.)

In the case of *Kinne v. Waggoner*, 108 Kan. 814, 197 Pac. 195, while the facts are not exactly like those found in the case at bar, yet the legal principles expressed in the fourth and fifth paragraphs of the syllabus are applicable generally, and are as follows:

"The facts touching the erection of a boundary-line fence between two farms, which the respective owners amicably and for many years regarded as located on the boundary line of their farms, and that the encroaching owner long possessed and enjoyed the strip of land between the true boundary line and the supposed boundary line, and that the owner of the land encroached upon had laid no claim thereto, examined, and *held*, that such facts are not sufficient to give rise to a claim of right by adverse possession in favor of the encroaching owner, where there was no evidence that the boundary line had been fixed by agreement, and when there was no evidence of the encroaching owner's intention to claim adversely to his neighbor, and no evidence that his neighbor encroached upon had notice of such adverse claim.

"Adjacent landowners are not estopped to dispute the accuracy of a boundary line which by mistake they have long treated as such, nor does the occupancy of land beyond the true boundary line by an encroaching owner form a basis for adverse possession, unless the encroachment is made with intention to claim and hold adversely." (See, also, *Scott v. Williams*, 74 Kan. 448, 87 Pac. 550, and *Crawford v. Hebrew*, 78 Kan. 401, 96 Pac. 348.)

Counsel for appellant cite and quote liberally from the very comprehensive and exhaustive opinion in the case of *City of Rock Springs v. Sturm*, 39 Wyo. 494, 273 Pac. 908, which has been printed in full in 97 A. L. R. 1, together with an unusually long and complete annotation. In that opinion it was said that the main point in dispute in the law of adverse possession was the rule that possession must be taken and held under a claim of right or title of ownership, and especially where possession has been taken under a mistake, holding that "the intention to claim adversely need not be manifested by words but may be inferred from acts," quoting with approval from 33 L. R. A., n. s., 930, that "the trend of opinion is against disturbing him whose visible boundaries have existed for the period of the statute of limitations." The opinion also holds that the title owner has acquiesced in the possession of the encroacher when the possession is adverse. It is stated in the opinion that "an undue prominence seems at times to have been given to the mental or psychological process involved in the claim of right or intent to claim." (p. 510.)

In the case at bar we are at a loss for findings of fact as to the possession being adverse, as to the intent to claim adversely or as to notice and acquiescence. The opinion just discussed is mostly to the effect that some of these may be inferred from others. There were no findings made in that case, but judgment was rendered by the trial court in favor of the one claiming by adverse possession. There were also unusual facts as to the possession being notice to the plaintiff. The land there in dispute was a substantial addition to the lot of the defendant by the change of the bed of a stream which bounded his lot on one side. The opinion stated that the defendant filled up the added land to the level of his lot, built a board fence around that part of it, and later built thereon a chicken house, and still later erected thereon a substantial building costing several thousand dollars. This fact is consistently mentioned in the opinion as being more of a notice and acquiescence than the occupancy of less valuable vacant or prairie land.

Notwithstanding the logical reasoning in the opinion last cited, and the alleged trend of decisions in favor of one occupying land under a mistaken belief as to boundary line for the period of the statute of limitations, we adhere to our earlier expressed views that the possession of land must be adverse or hostile and with the intent to claim title thereto, unless acquiesced therein by the title

owner, before the encroaching claimant can recover title thereto under the statute of limitations. These matters not being found nor coming within a reasonable ground for inference, the occupying claimant cannot recover.

The judgment is affirmed.