No. 36,672

W. N. CRAIG, *Appellee*, v. W. A. PAULK, *Appellant*.

(176 P. 2d 529)

Opinion filed
January 25, 1947.

*J. Howard Wilcox,* of Anthony, argued the cause, and *Edwin C. Wilcox,* of Anthony, was with him on the briefs for the appellant.

*Donald Muir,* of Anthony, argued the cause, and *W. G. Muir,* of Harper, was with him on the briefs for the appellee.

The opinion of the court was delivered by

HOCH, J.: This was an action in ejectment. The plaintiff, Craig, prevailed and the defendant, Paulk, appeals, asserting error in overruling his demurrer to plaintiff's evidence and in giving certain instructions to the jury and in refusing other instructions requested. To simplify the narrative, the parties will be referred to by name.

The controversy relates to the ownership of a strip of land comprising ten or eleven acres in township 33 south, range 9 west of the 6th P. M. in Harper county. Craig asserts ownership and right of occupancy as title holder to the northwest quarter (except fifteen acres thereof not here in controversy) of section 32, and Paulk claims the disputed strip as owner of the north half and the southeast quarter of the northeast quarter of section 31, which section lies immediately to the west of section 32. Both Craig and Paulk claim title to the land described in their deeds under chains of title not here in dispute. The controversy resolved itself into the single issue of whether the strip was a part of the northwest quarter of section 32 or a part of the northeast quarter of section 31.

Craig bought his land in 1942. Paulk bought in 1941, his contract of purchase covering the north half and the southeast quarter of the northeast quarter and also the northeast quarter of the northwest quarter of section 31. North of sections 31 and 32 is a travelled road, and there is no contention that this east-and-west road is not properly located. A short distance east of Paulk's house is a north-and-south road which has long been traveled. This road extends straight on north between the sections which lie north of 31 and 32. The disputed strip, running north and south, lies immediately east of the north-and-south road. Paulk contended that the north-and-south road is not the proper boundary between sections 31 and 32, but that the east line of his land is about 210 feet farther east.

The case was tried by a jury and considerable evidence received. The jury brought in a general verdict for Craig and judgment was entered for recovery and possession by Craig and quieting his title to the disputed strip as against Paulk. This appeal followed.

Extended recital of the evidence is not necessary. It is not denied that Paulk has been farming the strip nor that a number of his predecessors in occupancy of the northeast quarter of section 31 have farmed it. On the other hand, it is not denied that Craig alone has paid taxes on the northwest quarter of section 32. There is no claim that any part of such taxes was ever paid by Paulk or his predecessors.

Paulk testified: "The strip of land we are talking about is across the road on the east side. There are some trees on the land. There is a grove of trees by the house and over on the line is cottonwoods. There are cottonwood trees on the line. There are a group of trees and one possibly three feet through and scattered along down and several at the south end. They go clear through to the south line and clear along on my south line. The trees are along the east side of this strip along the east and north and a small grove across from my house."

One witness testified that he had lived in the county since 1906; that he owned land close to that in controversy and had been going by it since 1906; and that for a great many years the strip east of the road has been farmed by "the people farming the place west of the road." He testified that he did not think there was a row of trees along the east side of the strip; that there was a fence there for several years; that for a short time there was a lane along the east side of the strip but he didn't think there was ever a road there. Persons who had owned the land west of the road testified that there was a strip of about ten acres on the east side of the road "that went with this farm." One testified that he farmed the strip "and no one ever made any claim to it." He testified that he thought there was a road on the east side and at one time "there was quite a row of trees on the east side and a fence all the time I owned it." There was other similar testimony in behalf of Paulk. On the other hand, there was some testimony that at certain periods prior to about 1920, the strip had been farmed by persons who were farming the quarter section now owned by Craig. There was considerable testimony concerning the finding of a stone marker 168 feet east of the intersecting line of the two roads referred to.

H. B. Stout, county surveyor of Harper county, testified that he had been employed by both sides to make a survey and he submitted a chart which he had prepared and which was introduced in evidence. This chart shows the location of the north-and-south road heretofore referred to, and also the east-and-west road north of sections 32 and 31. Stout testified that there was a government stone in the center of the intersection at the northeast corner of section 32 and that there was a government stone on the Barber county line at the northwest corner of section 31; that he took a measurement 5,280 feet west from the government stone at the northeast corner of section 32 and a measurement east from the government stone on the Barber county line with the result that there was a gap of eleven feet between the measurements. In any event, according to the plat or chart which he submitted, the disputed strip appears as a part of the northwest quarter of section 32, owned by Craig. Stout testified that he did not find any stone at the intersection of the two roads referred to; that he found a stone about 168 feet east of the north-and-south road and 31 feet west of the east side of the disputed strip, but he did not have any record of that stone in any of his surveys and he did not know how it got there. He testified further that the submitted plat was drawn "according to Mr. Paulk's deed," and that if the disputed strip were attached to Paulk's land, it would leave Craig's quarter section ten or eleven acres short.

The northwest corner of section 32 and the northeast corner of section 31 might have been established in the manner provided in sections 19-1423 to 19-1427, G. S. 1935. However, the result of the survey made by the county surveyor—employed by both sides—constituted competent, though not conclusive, evidence under the specific provisions of section 19-1414, G. S. 1935. The verdict being supported by substantial evidence, the judgment must be affirmed unless the matters complained of on the motion for a new trial constitute trial errors which require a new trial.

Appellant contends that the trial court erred in not instructing the jury on the matter of adverse possession. The appellee answers, first, by saying that in the course of the trial, appellant abandoned any claim based on adverse possession. As to that, we think that what was said by counsel for appellant may at least be open to the construction that he was only disclaiming any claim based upon payment of taxes on the northwest quarter of section 32. It is

clear, however, that appellant's sole contention was that the disputed strip was not a part of the northwest quarter of section 32 but was part of the northeast quarter of section 31.

In cases from other jurisdictions there are divergent views upon the question of whether there can be adverse possession of a boundary strip occupied under mistake as to the true boundary line. (1 Am. Jur. 914 *et seq.*; 97 A. L. R. 14 *et seq.*) Although other statements of the law made later in the text are difficult if not impossible to harmonize, it is asserted in 1 Am. Jur. at page 914 that "the great weight of authority is to the effect that an open, notorious, and hostile possession of property for the statutory limitation period is sufficient for the acquisition of title by adverse possession, and that the fact that the possession was taken under a mistake as to the boundary lines is immaterial." This view is stated as follows in a comment note in 80 A. L. R. at page 158:

"When a person goes into possession of land under a deed, he regards himself as the owner of specific land, of the particular ground which he sees with his eyes and furrows with his plow. His ownership, in his own mind, is not of an abstract parcel described by metes and bounds, or of a certain number of acres, but of particular land. The fact that the occupant might, if he knew that he was on his neighbor's land, recognize and accede to the latter's title, does not affect the adverse character of his possession, where, because there has never been any question or doubt as to the location of the boundary, he possesses and uses the property as his own, and does not recognize or accede to any superior title."

A different view has been taken in this state. It has been held in a series of cases that title to a boundary strip cannot be established by adverse possession where the possessor occupies the boundary strip simply upon a mistaken belief that a fence or other line constitutes the true boundary line. In *Edwards v. Fleming,* 83 Kan. 653, 112 Pac. 836, the rule was stated as follows:

"Where a fence is believed to be the true boundary and the claim of ownership is up to the fence as located, *if the intent to claim title exists only on the condition that the fence is on the true line* the intention is not absolute, but conditional, and *the possession is not adverse.* (*Scott v. Williams,* 74 Kan. 448.) If, however, in such a case there is a clear intention to claim the land up to the fence, *whether it be the correct boundary* or not, the possession will be held adverse." (Italics supplied; syl. ¶ 3.)

In *Steinbruck v. Babb,* 148 Kan. 668, 84 P. 2d 907, in which that view was reaffirmed, many of our cases stating the rule were collected and discussed. This rule was again adhered to in the recent case of *Simpson v. Goering,* 161 Kan. 558, 170 P. 2d 831. In that case, the

defendant and his predecessors in title had farmed the disputed strip up to a wire fence under the mistaken belief that the wire fence was the dividing line between their land. A survey by the county surveyor established the fact that the true line was 131 feet east of the wire fence. We held that the fact that the defendant and his predecessors had farmed the disputed strip did not give him title to the strip by adverse possession. In syllabus paragraph 2 it was said:

". . . the fact that defendant and his predecessors in title had farmed this strip of land between the wire fence and the line established by the survey under a mistaken belief that the wire fence was on the true line between the farms did not establish title to the strip of land in defendant by adverse possession and did not prevent plaintiff from quieting his title to the strip of land as against defendant."

In the instant case, Paulk made no contention that even if the disputed tract was in fact within the northwest quarter of section 32, he and his predecessors had established ownership by adverse possession. He rested his case solely upon the contention that the strip was a part of the northeast quarter of section 31. Such being the issue, our cases just cited are applicable and controlling and there was no occasion for an instruction relative to an issue of adverse possession.

Appellant complains of instructions 8 and 9. In instruction 8 the jury was instructed to find for plaintiff if it found that the disputed strip was a part of the northwest quarter of section 32 "according to the original government survey of the lands of said county," and in instruction 9 it was similarly instructed to find for defendant if it found that the strip was a part of the northeast quarter of section 31. Appellant's contention is that there was no evidence as to the original government survey "except the one measurement on the county engineer's plat." We cannot say that such testimony constituted no substantial evidence upon which to predicate the instructions. No question was raised as to the proper location of the government stone at the northeast corner of section 32 nor as to the location of the government stone two miles west on the Barber county line.

Examination of other instructions to which objection was made discloses nothing which requires discussion. Appellant's contention that the trial court erred in overruling his demurrer to plaintiff's evidence is disposed of by what has already been said.

We find no error and the judgment is affirmed.