No. 38,796

In the matter of the appeal of IVAN H. MOORE from the survey of the county engineer (Ivan H. Moore, *Appellant*), and J. A. KELLER and LUCILE KELLER (*Appellants*) v. IVAN H. MOORE and MARGARET C. MOORE (*Appellants*), and ROBERT KLOEHR and MILDRED KLOEHR (*Appellees*).

(252 P. 2d 875)

Opinion filed January 24, 1953.

*A. R. Lamb,* of Coffeyville, argued the cause, and *Clement A. Reed,* of Coffeyville, was with him on the briefs for the appellants.

*Roy Kirby,* county attorney, argued the cause, and *Clement H. Hall,* of Coffeyville, was with him on the briefs for the appellees.

The opinion of the court was delivered by

WEDELL, J.: This is an appeal from a judgment in two cases which were consolidated for trial.

One case involved an appeal to the district court by Ivan H. Moore from a 1950 survey made by the county engineer of land referred to as block 108A in the city of Coffeyville. The other is a mortgage foreclosure action on lot 6, block 108, which is adjacent to and immediately north of block 108A. Although the tracts are referred to as blocks there is no street between them. Both tracts front west on Walnut street.

A few general statements, eliminating details to be disclosed later, will help clarify the background of the actions. The primary dispute is one of ownership of a strip of ground containing a west frontage of 32.5 feet.

In 1946 Ivan H. Moore purchased the north tract, lot 6, block 108, which for brevity will be referred to hereafter as block 108. He had the title thereto examined by his attorney. A sketch contained on the first page of the abstract of title to block 108 disclosed that land had a 490 foot west frontage on Walnut street. The abstract contains nothing to indicate a shorter frontage.

In 1909 people by the name of Carpenter owned both block 108 and block 108A and in 1909 they had block 108A platted. That plat recites block 108A *begins at the southwest corner of block 108.* Thereafter follows a description to the south, east, north and back west to the southwest corner of block 108. The Carpenters' first conveyance of block 108A was to Lawrence E. Hower and his wife. The property was described as:

"All Block 108 "A" in the City of Coffeyville, *according to the recorded plat thereof.*" (Our italics.)

In 1944 the Howers conveyed the same property to Charles W. Morris and Glen Morris.

In 1948, Moore, the owner of the north tract, or block 108, desired to build a filling station thereon. Soon after acquiring title thereto in 1946 Moore had discussed the location of the dividing line between these tracts with the Morrises. The parties agreed the dividing line was within two or three feet of a gas meter located near Walnut street. That meant the Morrises agreed that block 108A which they had purchased began at the southwest corner of block 108 and was located south thereof. This was in conformity with a

490 foot frontage on Moore's block, 108, and included the 32.5 feet now in controversy.

However, in order to make doubly certain as to the exact location of the dividing line before building and leasing a filling station on the south part of block 108 Moore requested the county engineer to make an official survey of his ground. As a result of such survey in 1948 it was determined the line was almost exactly where Moore and the Morrises previously had agreed it was. This survey likewise disclosed a west frontage on block 108 of 490 feet. That 490 foot frontage on block 108 also corresponded with the 1896 city plat. The county engineer set iron pins at the four corners of block 108 which fixed the south line thereof at points including the 32.5 feet now in controversy. The survey was recorded. The Morrises were not notified of the survey but the result thereof, as stated, was in harmony with their previous agreement with Moore.

The Morrises do not now own block 108A. The contest is not with them but with others who will be indicated presently. After the completion of the 1948 survey Moore directed the attention of the prospective lessees of the filling station to where the south boundary line of block 108 had been fixed by the surveyor. The location was satisfactory to the prospective lessees. However, in order to bring the ground to street level on Walnut street Moore was obliged to cut it down about three feet for a distance of some 200 feet at the extreme south end of block 108 which he was about to lease. Moore also blasted out of solid rock a space for a septic tank which he located on the 32.5 foot strip. He expended between $5,000 and $7,000 on a filling station and appurtenances. The record does not disclose whether any portion of the filling station buildings are on the 32.5 foot strip of ground. The evidence discloses the driveway to the filling station enters at the southwest corner of the 32.5 foot tract where the surveyor had set the pin to designate the southern boundary of block 108.

Moore testified he had paid the taxes on the entire 490 foot tract which included the strip of 32.5 feet and the city required him to keep the weeds thereon mowed. On April 14, 1950, Moore executed a lease on the south 200 feet of block 108 for filling station purposes for a five year term and included an option to the lessees to renew the lease for an additional five year period on termination of the primary term. It appears the taxes on block 108A had been in arrears for a period of at least three years. The county of Montgomery instituted a tax foreclosure action. The petition, judgment,

order of sale, sheriff's notice of sale, publication notice and all other proceedings prior to the sheriff's deed described the property to be sold for taxes as follows:

"Block 108A, Original, City of Coffeyville (Northwest corner is Four Hundred Ninety (490) feet south of the southeast corner of 15th and Walnut Streets). . . ."

The sheriff's deed to the purchaser, C. G. Buton, who was the highest bidder at $36, contained the description "All of Block 108 A, Original City of Coffeyville." The Morrises, as owners of property to be sold, were made defendants in the tax foreclosure action. Ivan H. Moore was in possession of the 32.5 foot strip by tenants who were operating a filling station thereon. He was not made a party defendant. The tax deed was issued and delivered to C. G. Buton November 8, 1950. On November 20, 1950, Buton and his wife gave a quit claim deed to Robert Kloehr and Mildred Kloehr, describing the property as "All of Block 108 A, Original City of Coffeyville." Robert Kloehr was one of the county commissioners of Montgomery county.

On December 4, 1950, Robert Kloehr requested the county engineer who had made the 1948 survey of block 108 to make a survey of block 108A. Although Ivan H. Moore was in possession of the 32.5 feet of land by tenants to whom he previously had given a lease beginning April 15, 1950, neither he nor the tenants was notified of the survey. The surveyor notified Moore of the results of the survey after it was completed. In this last survey the north line of block 108A was placed so as to produce an overlap on block 108 to the extent of 32.5 feet. Following that survey the Morrises executed and delivered a quit claim deed to the 32.5 feet in controversy to Ivan H. Moore. It is from the last survey that Ivan H. Moore appealed to the district court.

A mortgage foreclosure action on block 108 had been instituted by J. A. Keller and Lucile Keller in which they claimed a lien on block 108 contending their mortgage covered 490 feet of frontage which included the 32.5 feet of ground. The trial court held the 1948 survey was not binding on the owners of block 108A (the Morrises) for the reason it was made without notice to them and without their participation. The court held the 1950 survey was valid and also concluded title to the disputed 32.5 feet was in Robert and Mildred Kloehr, his wife. The Kellers and Moore have appealed to this court. As heretofore stated the foregoing is not intended to be a detailed and complete narration of the facts but

only a general outline of events out of which these consolidated actions arose.

The trial court made findings of fact and conclusions of law which are appended hereto.

It will be observed the court did not include in its findings the facts previously narrated herein concerning the agreement between Moore and the Morrises as to what constituted the dividing line between blocks 108 and 108A. It is also observed the findings do not disclose the fact Moore made costly improvements on the property in controversy in reliance on that agreement and on the fact the first survey fixed the dividing line where the respective owners agreed it was. We regard these facts as material. Appellant requested they be made and the court should have made them. The court in commenting on posttrial motions stated there was no evidence of an agreement between the parties as to the dividing line. In that statement the court erred. There was clear and positive evidence of such an agreement and we find no evidence to the contrary. Furthermore the Morrises later executed a quit claim deed to Moore for the ground in dispute. We, therefore, are not confronted with a situation where a trial court may disbelieve certain evidence and this court is asked to reverse its findings. It early was held in *Steinhilber v. Holmes*, 68 Kan. 607, 75 Pac. 1019, that:

"Where parties by mutual agreement fix boundary lines and thereafter acquiesce in the lines so agreed upon, they must be considered as the true boundary lines between them, even though the period of acquiescence falls short of the time fixed by statute for gaining title by adverse possession.

"The owners of adjoining tracts of land may, by parol agreement, settle and permanently establish a boundary line between their lands, which, when followed by possession according to the line so agreed upon, will be binding upon the parties and their grantees. Such an agreement, followed by possession, is not obnoxious to the statute of frauds." (Syl. ¶ 1, 2.)

Even though a line agreed upon by adjoining property owners be not exactly correct it becomes the true dividing line between the lands by virtue of such an agreement, even if a subsequent survey should establish a different line. (*Terrell v. Chessmore*, 94 Kan. 611, 146 Pac. 1152; *Schlender v. Maretoli*, 140 Kan. 533, 37 P. 2d 993; 11 C.J.S., Boundaries, § 89d.)

We need not discuss the abstract question whether an official survey may be made to amend or correct a previous one. Here the 1950 survey made no attempt to amend or correct the 1948 survey.

The last survey merely resulted in leaving on the public records two separate, independent and inconsistent surveys. Such a public record is fatally indefinite. Instead of establishing permanent boundary lines it results only in confusion. Manifestly a new survey cannot be permitted to be employed as a means of disturbing vested rights acquired, as here, in reliance on an earlier survey (8 Am. Jur., Boundaries, § 102) and much less may those rights be thus disturbed in violation of a valid agreement between immediately adjacent property owners. Were the rule otherwise there could be repeated surveys with the result that each would disturb rights acquired in reliance on a former survey. The very purpose of establishing official permanent boundary lines would be completely defeated.

Before further discussing the trial court's rulings with respect to the surveys we pause to state an established rule. It is that surveys merely establish boundary lines. They do not determine title to land involved. The subject of title is no concern of the surveyor. (*Swarz v. Ramala,* 63 Kan. 633, 66 Pac. 649; *Wagner v. Thompson,* 163 Kan. 662, 186 P. 2d 278.) The question of title will be treated later.

In view of the extended arguments of the respective parties pertaining to the validity of the surveys we shall comment thereon. The court concluded the 1948 survey of block 108 was not binding on the owners of block 108A, having been made without notice to them and without their participation. At that time the Morrises were the owners of block 108A. They previously had reached an agreement with Moore relative to the dividing line. The 1948 survey coincided with their agreement. It, therefore, in nowise affected the claimed rights of the Morrises. Although technically the Morrises were entitled to receive notice of the survey, as required by G. S. 1949, 19-1423, we find it difficult to say the 1948 survey must be regarded as a nullity. It was recorded. Moore acted upon it and on the agreement with the Morrises. Moore proceeded with the development of the property in reliance on the agreement and the survey. The Morrises were the only persons who might have complained for want of notice. Their rights were not affected. They have not and do not now complain thereof. On the contrary they at all times acquiesced in the possession of the property and in the development thereof by Moore. Ultimately, as stated, they gave the Moores a quit claim deed to the ground in controversy. It, therefore, would appear the Morrises waived lack of notice. There was no appeal from the 1948 survey. The present objection thereto is purely a

collateral attack by appellees. Nevertheless we need not rest our decision on the 1948 survey.

We turn now to the 1950 survey which the trial court held to be valid. We find some difficulty with that conclusion for a number of reasons but shall not pursue all of them. It is sufficient to note this survey was requested by Kloehr after he bought from Buton, the purchaser at the tax foreclosure sale. At the time of this survey Moore was in possession of the land in controversy by a tenant who was operating a filling station thereon. Neither Moore nor his tenant was notified of the 1950 survey. If sustained it reduces the width of Moore's land by 32.5 feet. Appellees argue Moore waived want of notice by the fact he subsequently perfected an appeal from the 1950 survey after he was notified thereof, citing *Great Western Petroleum Corp. v. Allen,* 119 Kan. 731, 241 Pac. 248, as authority for the claim of waiver. A careful reading of the opinion in that case discloses it does not support appellees' contention. On the subject of waiver of notice it was there said:

"There would be some ground for the plaintiff's contention and the principles he invokes if the defendant without notice of the proposed survey had voluntarily appeared and participated in it." (p. 732.)

We have no hesitancy in concluding the 1950 survey was invalid for want of notice to Moore. On his appeal therefrom he, of course, had the right to urge any legal objection thereto. (*Great Western Petroleum Corp. v. Allen,* supra, p. 732.)

But, as already stated, title is not determined by surveys. We, therefore, turn to the issue of title. In doing so we find it unnecessary to encumber the reports with a lengthy narrative of what a careful analysis of all the city plats, surveys and other exhibits reflects.

To begin with we find nothing in this record to disturb the title of the Moores as fixed by the dividing line agreement made by them and the Morrises. Beyond that agreement there was possession and development of the land in controversy over a period of years in complete harmony with that agreement. The Morrises have never contested the title of the Moores to the tract of land in controversy but on the contrary have at all times acquiesced therein.

We shall next examine a court proceeding which also determines title. In our approach to that proceeding we shall endeavor to proceed in precisely the same manner as, in all probability, the county attorney proceeded in preparing the tax foreclosure action. Those proceedings are significient in view of the fact appellees do

and must rely on the title to the land received by their grantor, a tax sale purchaser.

What land did the county undertake to sell for delinquent taxes? Was it any part of the land which belonged to the appellant Moore? Obviously it was not or the county would have made him a party defendant to such action, which it did not do. In order to sell city lands for delinquent taxes the county was obliged to follow the provisions of G. S. 1949, 79-2801, which required it to give a description of the tract, lot or piece of real estate, giving the street number, or *location,* thereof. If block 108A had a street number it was not given. The county described the land by location. From where did the county obtain the location of the particular land upon which it claimed the taxes had remained unpaid for three years? Obviously it was from the tax rolls.

The petition in the tax foreclosure action described by location the property to be sold as follows:

"All of Block One Hundred Eight A (108A), Original (northwest corner is Four Hundred Ninety (490) Feet South of southeast corner of 15th and Walnut Streets)."

Furthermore if the above location of block 108A was obtained from the records in the office of the register of deeds there was much evidence to support the fact Moore's land had a frontage of 490 feet. Such frontage was clearly indicated in the 1896 city plat and in the 1948 survey, which was recorded. It is true as appellees contend there also was evidence in the public records which indicated or tended to show block 108 did not have a frontage of 490 feet.

Our concern is not whether the county properly analyzed and interpreted the public records before it instituted the tax foreclosure action. Our only problem on review is to determine what land it actually undertook to sell for delinquent taxes. To that question the county supplied its own answer in the tax foreclosure action and the purchaser at the tax sale and his grantees, appellees, are bound thereby. We are informed the petition, judgment, the sheriff's notice of sale and the publication notice all describe the location of the property to be sold as previously indicated.

We think the only reasonable interpretation to be placed thereon by interested parties and others who might have desired to purchase at the sheriff's sale was that the property to be sold was located south of a line 490 feet south of the southeast corner of Fifteenth and Walnut streets. The sheriff's return shows that was the property

which was sold to C. G. Buton for $36. It was the sale of that property and not all of block 108A, irrespective of how much ground block 108A may have embraced, that the district court approved. We now come to the sheriff's deed which did not conform to the property described in the tax foreclosure proceedings. That deed described it as, "All of Block 108A, Original City of Coffeyville." The sheriff's deed did not operate to convey title to property over which the district court had no jurisdiction and had not ordered sold. (*Blair v. Pooler*, 160 Kan. 201, 204, 160 P. 2d 672.) The result is Buton, the purchaser at the tax sale, acquired title only to such land as was legally sold and his grantees, the Kloehrs, to whom the Butons gave a quit claim deed acquired no title to land the Butons did not own. The subsequent quit claim deed for the land in controversy from the Morrises to Ivan H. Moore vested him with full legal title thereto even though Moore had not acquired such title by virtue of his early agreement with the Morrises.

One other matter should be mentioned. The record before this court discloses without contradiction the appellant Moore had paid the taxes on the entire 490 foot tract. The district court, therefore, would have been without jurisdiction to entertain an action to foreclose a tax lien thereon even though the county had attempted to do so (*Magnolia Petroleum Co. v. Moyle*, 162 Kan. 133, 175 P. 2d 133; *Shell Oil Co. v. Board of County Comm'rs*, 165 Kan. 642, 197 P. 2d 925), which it did not.

Having reached these conclusions we need not treat appellants' other contentions. The judgment is reversed and the action is remanded to the district court with directions to enter judgment in conformity with the views herein expressed.

### "FINDINGS OF FACT

"1. The original plat of the City of Coffeyville, filed October 20, 1871, in the office of the Register of Deeds, shows the following:

"(a) Fifteenth Street runs east and west and Walnut Street runs north and south forming an intersection at the point of crossing.

"(b) Lot 6, Block 108 is an area at the southeast corner of the intersection, bordered on the north by Fifteenth Street and on the west by Walnut Street, the frontage on Walnut Street not being indicated by feet or any other measurement.

"(c) Cross Street is indicated as a short east and west street intersecting Walnut Street from the west but ending with Walnut Street. According to the original plat if Cross Street were extended to the east from Walnut it would cut off the south end of said Lot 6, Block 108.

"(*d*) L. L. & G. Railway right-of-way south of and adjacent to said Lot 6 fronting on Walnut Street, the frontage on Walnut Street not being indicated in feet or any other measurement.

"(*e*) The relative positions of Lot 6, the right-of-way and Cross Street as shown on the plat indicate that the south line of Cross Street extended east would be the north line of the right-of-way and the dividing line between Lot 6 and the right-of-way.

"2. Another plat of the area involved was filed July 7, 1896, and shows:

"(*a*) Lot 66, Block 108 to have an indicated frontage on Walnut Street of 490 feet.

"(*b*) The Railroad right-of-way in the same relative position to Cross Street as in the original plat, its frontage on Walnut not being indicated in feet or other measurement.

"(*c*) The area on the west side of Walnut opposite Lot 6 is shown to have a frontage on Walnut of 280 feet in addition to the unspecified width of Cross Street. Assuming that Cross Street is 66 feet wide as shown in the original plat it would be impossible for the area on the west of Walnut to have a frontage of 346 feet and the similar area on the east side to have 490 feet front. This indicates erroneous measurements in the area.

"3. On April 26, 1894, Temple West Carpenter, wife of Chas. T. Carpenter, acquired title to Lot 6, Block 108 by warranty deed, describing the property as,

"Lot 6 of Block 108 of the City of Coffeyville, Kansas.

"4. On December 12, 1901, title to the right-of-way property south of and adjoining Lot 6 described by metes and bounds in which the north line of the right-of-way is an extension of the south line of Cross Street, was quieted by judgment in the District Court in one John Bridges.

"5. On April 25, 1906, Chas. T. Carpenter, husband of Temple West Carpenter, acquired title to the land mentioned in finding 4 by warranty deed.

"6. Thus, all the land known as Lot 6, Block 108 and the land known as the Railroad right-of-way in 1906 came to be vested in the common ownership of the Carpenters.

"7. On June 18, 1909, Chas. T. Carpenter and Temple W. Carpenter, husband and wife, platted Block 108A (the old L. L. & G. Railroad right-of-way theretofore described by metes and bounds using the extension of the south line of Cross Street as the north line thereof) and filed a plat thereof in the office of the Register of Deeds which plat still shows the north line of Block 108A to be an extension of the south line of Cross Street, and further showing its width to be 77.1 feet and the northwest corner to be 458.3 feet south of the intersection of Fifteenth and Walnut Streets.

"8. On June 27, 1934, Chas. T. Carpenter and Temple W. Carpenter, his wife, conveyed by warranty deed all of Block 108A in the City of Coffeyville according to the recorded plat thereof, to Lawrence E. Hower and wife.

"9. That in all conveyances and proceedings affecting the title to the property platted in 1909 as Block 108A by the Carpenters, prior to the plat, said property had been described by metes and bounds fixing the north line as an extension of the south line of Cross Street.

"10. The south line of Cross Street thus became a fixed monument in

defining the boundaries of Block 108A notwithstanding the call measurements used from time to time in defining the frontage of Lot 6, Block 108 on Walnut Street.

"11. When the common owners of all the property involved conveyed all of Block 108A to the Howers in 1934, they still owned said Lot 6 whatever the foot frontage on Walnut.

"12. On March 11, 1944, title to the Block 108A passed by warranty deed from the Howers to Charles W. Morris and Glen Morris.

"13. On January 31, 1946, Carpenter heirs *convey* to Ivan H. Moore by warranty deed Lot 6, Block 108, Original Plat of the City of Coffeyville.

"14. On November 8, 1950, in Tax Foreclosure proceedings in the District Court, the interest of the Morrises was sold by C. G. Buton, the petition and the publication notice in the proceedings describing the property as Block 108A, Original, City of Coffeyville (Northwest corner is Four Hundred Ninety (490) feet south of the southeast corner of 15th and Walnut Streets), but the deed describing it as Block 108A, Original, City of Coffeyville.

"15. On November 20, 1950, Buton conveyed to the Kloehrs Block 108A, Original City of Coffeyville.

"16. On the 14th day of May, 1948, at the request of Ivan H. Moore, the County Engineer made and filed a survey of Block 108 including said Lot 6, giving notice to all the owners of property in Block 108, but without notice to the owner of Block 108A who was affected by the survey. In establishing the southwest corner of Lot 6, the county engineer measured the frontage on Walnut to be 490 feet according to the 1896 plat.

"17. On the 4th day of Dec., 1950, at the request of Robert and Mildred Kloehr, owners, the county engineer made and filed a survey of Block 108A using as a fixed monument the south line of Cross Street in determining the north line of the Block 108A and giving it a frontage of 77.1 feet on Walnut. This resulted in an overlap of 32.5 feet on the 1948 survey.

## "CONCLUSIONS OF LAW

"1. The 1948 survey was not binding on the owners of Block 108A, having been made without notice to them and without their participation.

"2. The parenthetical statement, (northwest corner is Four Hundred and Ninety (490) feet south of the southeast corner of Fifteenth and Walnut Street) used in connection with the description in the petition and publication notice in the Tax Foreclosure proceedings in the District Court was inserted for the purpose of complying with requirements of G. S. 79-2801, that the street number or location of the property be stated, and not as a real legal description of the property, and the sheriff's deed conveying the property did not include the parenthetical expression.

"3. The sheriff's deed conveyed the entire Block 108A as platted by the Carpenters in 1909 and all the interest of the Morrises therein; and Ivan H. Moore took nothing by their quit claim deed to the 32.5 feet.

"4. The Carpenters, being the common owners of all the property, conveyed to Kloehr's predecessor in title in 1934 the Block 108A as platted by them in 1909 the same having a Walnut Street frontage of 77.1 feet. After this conveyance the Carpenters remained vested with only the actual footage remaining in Lot 6.

"5. By their deed in 1944 to Ivan H. Moore to Lot 6, Block 108, Original City of Coffeyville, the Carpenter heirs conveyed to him only what they actually owned in Lot 6 and no more. It could include none of Block 108A which had already been conveyed.

"6. The fixed monument, the south line of Cross Street, governs over the call measurements in feet in fixing the frontage on Walnut Street.

"7. Regardless of the validity or non-validity of the 1948 survey, the owners of Block 108A cannot be thereby deprived of title to any part of their property.

"8. Title to the disputed 32.5 feet is in Robert Kloehr and Mildred Kloehr, his wife.

"9. The 1950 survey is valid and the appeal therefrom without basis.

"10. In the mortgage foreclosure action, insofar as title to the 32.5 feet in dispute is concerned, based on the above Findings of Fact, and in addition all of the evidence and exhibits adduced at the trial, the court finds generally in favor of the defendants Kloehr."