No. 46,235

HENRY GNADT, EDWARD HAUER and WILMA HAUER, his wife, *Appellants,* v. EUGENE B. DURR, County Engineer; WALTER LIETZ, SR., WALTER E. WOMBLES and H. R. FIELDS, County Commissioners; and CLAUDE O. ADOLPH, County Clerk, all in their official capacity as agents of Wabaunsee County, Kansas, *Appellees.*

(494 P. 2d 1219)

Opinion filed March 4, 1972.

*Bruce C. Harrington,* of Hiatt and Spurgeon, of Topeka, argued the cause and was on the brief for the appellants.

*Bill Baldock,* County Attorney, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

SCHROEDER, J.: This is an action pursuant to K. S. A. 60-907 (*a*) to enjoin the county officials of Wabaunsee County, Kansas, from assessing one-half of the costs of a legal survey to the plaintiffs. The trial court held K. S. A. 1970 Supp. 19-1427 required the assessment of one-half of the costs of such survey against the plaintiffs.

The only question on appeal is the construction of K. S. A. 1970 Supp. 19-1427.

At the pleading stage of the case both the appellants (plaintiffs below) and the appellees (defendants below) filed motions for summary judgment on facts which are not in dispute.

On the 8th day of December, 1969, real estate owned by the appellants was the subject of a legal survey initiated by the county engineer of Wabaunsee County, Kansas. The survey was requested by Walter Mathies, an adjacent landowner to the appellants' property, pursuant to K. S. A. 19-1423. No appeal was taken from such survey by the appellants as authorized by K. S. A. 19-1426.

On the 9th day of March, 1970, the county commissioners of Wabaunsee County, Kansas, under the authority of K. S. A. 1970 Supp. 19-1427, assessed one-half of the costs of such survey, or $392.75, against the appellants whose lands were situated on the boundary line.

On the 4th day of May, 1970, the appellants filed this action in the district court of Wabaunsee County, Kansas, seeking to enjoin the county officials of Wabaunsee County from assessing the costs of such survey against them.

Thereafter, on the 12th day of June, 1970, the district court overruled the appellants' motion for summary judgment and sustained the appellees' motion for summary judgment, thereby holding as a matter of law that the appellants were required to pay one-half of the costs of such survey. The appellants have duly perfected an appeal to this court from such adverse judgment.

In pertinent part K. S. A. 1970 Supp. 19-1427, provides:

"The cost of replacing all lost government survey corners shall be assessed to the county or township. The county surveyor, upon replacing a government survey corner shall notify the county commissioners of the cost thereof; and

such costs shall be paid from the county or township road fund, as deter-mined proper by the county commissioners. *The county surveyor, subject to the approval of the county commissioners, shall apportion the actual cost of the survey, after the government corners are reestablished, equitably among the landowners whose lands are situated on the boundary line, according to the respective benefits received: . . ."* (Emphasis added.)

Attached to the appellants' motion for summary judgment is an affidavit of the appellants' attorney incorporating a letter received from Eugene B. Durr, the county engineer of Wabaunsee County, stating that "no government corners were reestablished" in making the legal survey. The recital of this fact gives rise to the contro-versy between the parties.

Both parties premise their argument on the fact that the survey was made *from already established and existing government corners.*

The appellants contend, since no government corners were re-established, there exists no authority under 19-1427, *supra,* for appor-tioning the costs of the survey to the appellants simply because their lands were situated on the boundary line. The appellants argue there is no method of payment provided by statute where lost corners have not been reestablished.

We have been cited to no Kansas case in point nor has our research disclosed any. Two Illinois cases cited to this court do not deal with the point in question.

It is a fundamental rule of statutory construction, to which all others are subordinate, that the purpose or intent of the legislature governs when that intent can be ascertained from the statute, even though words, phrases or clauses at some place in the statute must be omitted or inserted. This rule, stated in various forms, has been applied by this court throughout its history. (*Hunziker v. School District,* 153 Kan. 102, 109 P. 2d 115, and authorities cited therein; and *Wolf v. Mutual Benefit Health & Accident Association,* 188 Kan. 694, 366 P. 2d 219.)

This court has held when the interpretation of a statute (not penal in nature) according to the exact and literal import of its words would defeat the manifest purpose of the legislature in its enactment, it should be construed according to its spirit and reason disregarding, as far as may be necessary, the strict letter of the law. (*Wolf v. Mutual Benefit Health & Accident Association,* supra, and authorities cited therein.)

When a statute is susceptible of more than one construction it must be given that construction which, when considered in its

entirety, gives expression to its intent and purpose, even though such construction is not within the strict literal interpretation of the statute. (*Shumaker v. Kansas State Labor Dept.*, 154 Kan. 418, 118 P. 2d 550; and *Barten v. Turkey Creek Watershed Joint District No. 32*, 200 Kan. 489, 438 P. 2d 732.)

The appellants seek to isolate not only 19-1427, *supra*, from the enactment by the legislature authorizing legal surveys, but also isolate one sentence in the statute and attempt to give it a strained literal interpretation. Fundamental rules of statutory construction to be applied in this situation are well stated in *State v. Sumner*, 169 Kan. 516, 219 P. 2d 438, where the first three syllabi of the court read as follows:

"In order to ascertain the legislative intent courts are not permitted to consider only a certain isolated part or parts, of an act but are required to consider and construe together all parts thereof *in pari materia*.

"It is the duty of courts to reconcile various provisions of an act in order to make them consistent, harmonious and sensible if that can be done without doing violence to plain provisions therein contained.

"When the interpretation of some one section of an act according to the exact and literal import of its words would contravene the manifest purpose of the legislature, the entire act should be construed according to its spirit and reason, disregarding so far as may be necessary the strict letter of the law."

G. S. 1949, 19-1427 (the source of prior law for K. S. A. 1970 Supp. 19-1427, regarding the apportionment of costs where a legal survey was made) simply stated, "The county surveyor shall apportion the cost of the survey among the landowners interested, according to their respective interests."

The procedure provided by the legislature for establishing corners and boundaries of land authorizes the owner of a tract of land desiring to permanently establish the corners and boundaries to notify the county surveyor to make a survey thereof and establish such corners and boundaries. (K. S. A. 19-1423.) After proper notice is given to the persons who may be affected by the survey, the surveyor shall proceed to make the survey, take the evidence of any witness who may be produced to prove any point material to such survey, and file such testimony reduced to writing together with an accurate plat and field notes of such survey in the office of the county surveyor. (K. S. A. 19-1425.) Thereafter, any person interested in the survey is authorized within thirty days to appeal to the district court. The court upon hearing the matter to determine the appeal is authorized, for good cause shown, to set aside

the report and appoint one or more surveyors, who shall proceed at the time mentioned in the order of the court, to survey and *determine the corners and boundaries* of the land in question, and shall report the same to the court for further action. (K. S. A. 19-1426.)

The corners and boundaries established in any survey where no appeal is taken from the surveyor's report shall be held and considered as permanently established, and shall not thereafter be changed. When any report of a survey shall have become final the county surveyor is required to record the same in the records of permanent surveys and shall file the same in the office of the register of deeds. (K. S. A. 19-1426.)

It is obvious from the foregoing statutes, if a legal survey is to be made, the established government corners must be ascertained or confirmed and used in making the survey.

In *Roadenbaugh v. Egy,* 88 Kan. 341, 128 Pac. 381, the court held:

"In a survey, called for the specific purpose of establishing the boundary line between the northwest quarter and the northeast quarter of a certain section, it is the duty of the county surveyor, and of the court on appeal, to relocate the line according to the statutory rules for reproducing United States government surveys." (Syl. ¶ 1.)

It is apparent when the legislature in 1961 amended 19-1427, *supra* (L. 1961, ch. 136, § 6), and again amended it in 1967 (L. 1967, ch. 139, § 1) it intended to relieve the landowners, whose lands were situated on the boundary line, of the burden to pay the cost of replacing lost government survey corners where a legal survey was requested. The portion of K. S. A. 1970 Supp. 19-1427, heretofore quoted, is divided. The first sentence specifically imposes the responsibility for paying the cost of replacing all lost government survey corners upon the county or township. It also sets forth the procedure to be followed by the surveyor and the county commissioners in paying for the cost of replacing government survey corners. The second sentence makes no reference whatever to lost government survey corners. It simply provides the method of apportioning that part of the costs of the survey incurred, after government corners are reestablished. The clause "after the government corners are reestablished" in this portion of the statute is not a condition precedent, as the appellants would have us believe, to the apportionment of costs equitably among the landowners whose lands are situated on the boundary line. The condition precedent to making a valid survey to determine a boundary line is *the ex-*

*istence of established government corners.* If a survey is made prior to or without confirmation of established government corners, it would be of no benefit to anyone, and the costs could not be assessed to the landowners whose lands were situated on the boundary line. (See *Reinert v. Brunt*, 42 Kan. 43, 21 Pac. 807.)

The word "established" or "reestablished" was not used by the legislature as a word of art with an assigned statutory definition in the sections of the statute heretofore discussed. In 19-1426, *supra*, the expression used was "to survey and *determine* the corners and boundaries of the land in question." (Emphasis added.) It must therefore be construed as having the general definition assigned by usage. A resort to any dictionary will disclose that within the broad confines of the word "establish" there exist many meanings. It may be said an *existing* government corner *is established when its location is ascertained* in making a statutory survey. It could properly be said also that an *existing* government corner *is reestablished when its location is ascertained* in making a statutory survey. Among the many definitions of the word "establish" is one which defines the term as "confirm, validate." (Webster's Third New International Dictionary, Unabridged.)

Upon the foregoing, where a legal survey is made, we construe 19-1427 as requiring the county surveyor, subject to the approval of the county commissioners, to apportion the actual cost of the survey equitably among the landowners whose lands are situated on the boundary line, according to the respective benefits received. The imposition of such costs upon the adjacent landowners is not conditioned upon the reestablishment of lost government survey corners. In other words, there need not be the restablishment of *lost government survey corners* to impose the costs on adjacent landowners under 19-1427. If there be a cost to restablish lost government survey corners, such costs shall be paid by the county or township. Under the prior law these costs were assessed to adjacent landowners. Under the 1967 amendment in certain counties (not Wabaunsee) such costs may be assessed against the party or parties requesting such survey. (K. S. A. 1970 Supp. 19-1427.)

The legislative change was reasonable because established government survey corners constitute markers that are public in nature, and are placed for the benefit of all to use.

On the conceded facts in this case there was no cost to reestablish lost government corners. The survey was made from established

government survey corners which were ascertained and confirmed to be in existence in the course of the statutory survey and in accordance therewith. No appeal having been perfected from the survey, the costs of the legal survey were properly apportioned equitably among the landowners whose lands are situated on the boundary line.

The appellants argue that under the provisions of 19-1427, *supra*, costs cannot be assessed to them because they received no benefits by reason of the survey, and that the other landowner exclusively requested the survey. The appellants go beyond the record to argue they were deprived of 1.42 acres of land which they had farmed for years, claimed to own, held out their claim and belief of ownership openly and notoriously, and the survey precipitated a quiet title suit in the district court of Wabaunsee County, Kansas, which is still pending. They contend the survey has been a tremendous detriment and problem to them.

The establishment of a boundary line by legal survey does not deprive a property owner of land because official surveys merely establish boundary lines, and do not determine title to land under controversy. (See *In re Moore*, 173 Kan. 820, 825, 252 P. 2d 875.)

The results of an official survey are not the criterion upon which to determine whether benefits are conferred upon the adjacent landowners. The boundary line established by an official survey is of equal benefit to adjacent landowners having a common boundary within the statutory meaning of the term "benefit" because it establishes a common survey line. The actual line for title purposes may be established by other evidence, but that has no significance in assessing the costs of an official survey.

The reasonableness of the costs incurred in making the legal survey in question is not in controversy.

The appellants have been correctly and lawfully assessed one-half of the costs of the legal survey here in controversy. The judgment of the lower court is affirmed.