No. 46,214

EDDIE FRITZLER and FREDA FRITZLER, *Appellants*, v. FREDERICK C. DUMLER and NAOMI DUMLER, *Appellees*.

(495 P. 2d 1027)

Opinion filed April 8, 1972.

*Robert L. Earnest,* of Russell, argued the cause, and *Eric E. Smith,* of Russell, was with him on the brief for the appellants.

*Mark Arthur, Jr.,* of Russell, argued the cause, and *Marvin E. Thompson* and *Clifford R. Holland, Jr.,* both of Russell, were with him on the brief for the appellees.

The opinion of the court was delivered by

KAUL, J.: This action involves a dispute over a boundary line between adjacent properties owned by the parties. The underlying question is whether the boundary line is that established by a legal survey as claimed by Dumlers, defendants-appellees, or is a line established by an alleged mutual agreement as claimed by Fritzlers, plaintiffs-appellants.

The trial court found generally for defendants.

The land in question fronts on the west side of Highway 281 just south of the City of Russell. It was annexed to the city in 1968 and the tract now owned by plaintiffs was platted as Lot 23 and the tract owned by defendants as Lot 24, both tracts lying situate in Block 5, Witt-Carter Addition to the City of Russell. Fritzlers originally owned both tracts, having purchased the same from McKean Carter, the owner of a quarter section of which the tracts were a part.

Both parties submitted the testimony of several witnesses in a trial to the court. In rendering judgment, the trial court filed a memorandum decision in which all of the relevant facts developed by the testimony are set out—we quote as follows:

"In 1955, McKean Carter conveyed a rural tract some 305 feet by 300 feet to the plaintiffs. By late 1956 the plaintiffs had built a home and a cedar shelterbelt on the tract.

"Jacob Anschutz purchased the north 150 feet of this tract from plaintiffs on June 2, 1956. The shelterbelt was apparently planted by that time. Mr. Anschutz testified that when he made the purchase he was told by Mr. Fritzler that his property ran 150 feet north from this row of trees. There was no testimony that the boundary line was in dispute or that there was any agreement between the parties that the tree row was to be the boundary line. The statement was made by Mr. Fritzler as a matter of information only. Mr. Anschutz apparently had no reason to doubt the correctness of this designation and he apparently believed it to be true. The deed contained the ordinary general warranties. It also contained an attempted restriction providing that the land could not be used for non-residential purposes for fifteen years.

"Jacob Anschutz made no improvements upon the tract and no use of the land other than grazing. He sold it to defendants on November 18, 1958. At that time he told Mr. Dumler that it was 150 feet north from the tree row. This, again, was for information purposes. There is no evidence that there was any question about the boundary and certainly there was no controversy. In fact, Mr. Dumler claimed that he did not remember of this being said to him.

"Until 1965 there were no other conversations nor other acts done by anyone other than heretofore stated that had any bearing on the location of the boundary line of the property.

"During a highway widening project that bordered this property on the east, Mr. Dumler received an impression that his south property line as established by his deed was between the tree row planted by plaintiffs and the home built by plaintiffs. This was in 1965. There is no evidence that he then did or said anything in pursuance of this impression.

"On December 11, 1968, Mr. Dumler had his attorney write plaintiffs' attorney formally offering to sell the south 10 feet of his deeded land for $55 per running foot. This was the footage price that he could sell the tract for

to a Mr. Dortland for commercial purposes. In this connection, he offered to pay $200 to plaintiffs to release the attempted restrictive covenant about residential use. Plaintiffs were advised in this letter that Mr. Dumler had completed a survey which showed that the tree row and a portion of the house were on his land. By this time, a shed and two ornamental trees were also on the strip of land about which title was now being questioned. About this time, the City of Russell annexed all the plaintiffs' and defendants' tracts as Block 5, Witt-Carter Addition, plaintiffs' lot being designated as Lot 23 and defendants' as Lot 24.

"Plaintiffs and defendants were unable to agree upon a sale and removal of the covenant. On January 21, 1969, the defendants wrote the plaintiffs that they would keep the strip in controversy and take other legal action. They gave plaintiffs one week to remove the trees or 'we will remove them.'

"One week later defendants had all trees removed by a 14-ton crawler tractor. The ground was frozen and it proved to be too difficult to uproot the trees. Mr. Dumler was present and directed how the removal was to be done. He approved of cutting through them at the base when advised by the tractor operator of the impossibility of uprooting the trees. He directed the exercise of caution to not run into a corral at the back or the house in performing this work.

"The operation of the tractor caused vibration of the frozen ground that extended into the garage attached to the north part of the house. There were cracks in the garage before this operation. These cracks were caused by the use of construction materials that had differing rates of expansion and contraction and by settling of the foundation. The foundation apparently was below average in stability. While there was evidence that the cracks were the same before as after the operation, the court accepts the evidence of the plaintiffs to the extent that after the operation there were small piles of debris from the wall that evidenced either new or additional damage to the wall of the garage. The monetary amount of such damage is found to be $75.00.

"The court finds that there was no damage done to the driveway. In this connection, the court fully accepts the testimony of Mr. Schneider as to why the driveway crack had to exist before this operation.

"Toward the end of the trial, the court stated he did not intend to allow punitive damages because the conduct of Mr. Dumler was irresponsible rather than wanton. On reflection, the court finds that the action of Mr. Dumler in causing the crawler tractor of this size to be operated so close to the house under these conditions and when he was vexed because plaintiffs would not come to an agreement about the restrictive covenant was reckless disregard of plaintiffs' property and a wanton act. A proper award of punitive damages would be $200.00.

"On February 11, 1969, a legal survey was conducted at the request of the plaintiffs. It showed that the south line of the tract described in the deeds from plaintiffs to Anschutz and from Anschutz to defendants was about seven and one-half feet south of the trunk line of the shelterbelt cedars and about two feet south of the north wall of the garage and of the corral. The survey findings were not appealed and appeal time has expired.

"The market value of Lots 23 and 24 is $87.00 per front foot. The de-

fendants concede it would be unfair to take the position that plaintiffs are required to remove the improvements on the two feet above mentioned. The court interprets this as an admission by defendants that the court would be justified in doing equity as to this item by providing for a transfer of property.

"Plaintiffs occupied the strip in question in open and adverse possession from the time of building the house and planting the tree row which was about the middle of 1956, but they did so under a mistake as to the correct location of their north boundary line.

"The work of tree removal obviously involved possible damage to the plaintiffs' improvements even if performed with the utmost care, considering that the tractor-crawler would have to operate within two feet of the garage on hard ground which the operator admitted did cause vibration. The testimony of the professor expert that the tractor-crawler does not vibrate is pure sophistry."

The trial court made conclusions of law which we quote in part as pertinent to the issue presented on appeal:

"The legal boundary between Lot 23 and Lot 24 is that established by the legal survey of February 11, 1969. Plaintiffs concede that they cannot satisfy the statutory requirement of 'open, notorious and adverse' possession to obtain title by prescription as their holding period falls short of the required fifteen years.

"Plaintiffs claim that occupancy of the strip for close to the statutory period when combined with the designation of the boundary line to Anschutz and redesignation by Anschutz to Mr. Dumler is sufficient in law to establish title in them. The difficulty with this claim is that, as stated in 12 Am. Jur. 2d 85, 'acquiescence means a consent to the conditions and involves knowledge of them. It involves more than a mere establishment of a line by one party and the taking of possession by him.'

"While it may be that long continued acquiescence as to a boundary is evidence that it is the true line, a better view—if statutory law of prescription is to have any real meaning—would appear to be as stated in 12 Am. Jur. 2d 86: 'Some courts have gone so far as to hold that simple acquiescence, in the absence of an agreement, is without value and that no validating agreement may ever be inferred from it, requiring some showing of other facts from which an agreement may be inferred if the line is to be upheld.' Under this test, plaintiffs' claim must fail for there was no discussion of the boundary line between plaintiffs and defendants. Moreover, if plaintiffs are somehow entitled to consider Anschutz as their messenger, there was never any conversation between any of the parties that rises to the quality of an 'agreement.' The designation was made, in each instance, by one who was parting with his interest rather than by two people consenting to each hold to a line in the future.

"In 12 Am. Jur. [2d] 87, the theory advanced by plaintiffs is probably correctly characterized as being one of estoppel. But estoppel must have a point of beginning: 'At the time of the location, a disputed, indefinite, or uncertain boundary line between the adjoining owners.' None of the people involved in these transactions considered the property line to be in

dispute. For definiteness and certainty the purchasers took the word of their grantors as definiteness and certainty were not in issue.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"The next legal point is the defense of defendants that plaintiffs are not entitled to recover for damage to the garage because the tree removal was done by an independent contractor. Conceding that the work was done by one generally in the independent contractor category, this defense fails for two reasons, either of which is sufficient.

"The factual findings of direction and supervision made herein are undisputed and make the relationship, as to this work, that of employer and employee.

"Secondly, since the work was of a type which was likely to result in damage to plaintiffs' property and since it involved a constructive trespass, defendants are not entitled to the benefit of immunity even if the employment was that of an independent contractor.

"Finally, since plaintiffs did not own the land, they did not have any property right in the trees. Surely every purchaser of property is advised in connection with his title opinion to 'determine by survey or otherwise the actual location of property lines.' Plaintiffs should have done this. If defendants had not already removed the trees, they would be entitled to do so now—subject only to the duty to remove in a manner that would not damage plaintiffs' property."

In line with its finding that defendants conceded it would be unfair to take the position that plaintiffs should be required to remove their improvements on the two feet of defendants' property, the trial court entered a judgment in substance that:

1. Plaintiffs are granted judgment in the sum of $75.00 for actual damages to plaintiffs' garage and for the sum of $200.00 as punitive damages.

2. Since plaintiffs are not the owners of the south ten feet of Lot 24 they are not entitled to damages for the destruction of the trees located thereon.

The court further decreed:

".   .   .   [T]hat defendants herein be granted judgment against plaintiffs in the sum of $870.00 for the taking of the south ten front feet of Lot 24, Block 5, Witt-Carter Addition to the City of Russell, Kansas, and it is further DECREED that defendants shall execute and deliver a warranty deed to plaintiffs conveying said ten front feet upon receipt of said $870.00, Provided: that plaintiffs shall have the alternative of acquiring the ten front feet of the land adjoining said Lot 24 on the north and conveying the same to defendants within 45 days of the date this journal is filed, in lieu of payment of the abovesaid $870.00"

and further ordered:

".   .   .   [T]hat title to Lot 23, Block Five Witt-Carter Addition to the City of Russell, Kansas, and the South ten feet of Lot 24 thereof be quieted

in plaintiffs from and after payment of the abovesaid $870.00 to defendants and delivery of the deed therefor to plaintiffs or from the date that plaintiffs and defendants exchange deed pursuant to the alternative above provided, whichever occurs first."

On the hearing of plaintiffs' motion for a new trial, which was denied, the court modified the original judgment with respect to the provisions for forty-five days abeyance by directing that in case of an appeal to this court the forty-five days provision should come into effect on the filing of the mandate of the decision of this court with the Clerk of the Court of Russell County.

On appeal, plaintiffs state their challenge to the trial court's ruling in these words:

"The main theory involved in this appeal and the one basically relied upon by the plaintiffs is that the boundary line established between the property owned by the plaintiffs and the defendants was established through agreement and acquiescence by the plaintiffs and defendants, and their predecessor in title, notwithstanding the boundary lines established by survey."

At the time of their conveyance to Anschutz, plaintiffs were the owners of all the land in question. In harmony with K. S. A. 58-2202 (formerly G. S. 1949, 67-202) which provides that every deed of real estate shall pass all of the estate of the grantor therein unless the intent to pass a less estate shall expressly appear or be necessarily implied in the terms of the grant, a deed is to be construed strictly against the grantor and to confer upon the grantee the greatest estate that its terms will permit.

The descriptions in the series of conveyances in the instant case are clear and unambiguous. The two legal surveys, the first initiated by defendants, at the request of a prospective purchaser, and the second, made later at the instance of plaintiffs, resulted in the fixing of the same boundary line. The field notes, included in the record on appeal, reflect that the survey was a simple matter in merely chain measuring the distance set out in the deed descriptions from the beginning reference point which was the northeast corner of the Carter quarter section.

As a general rule, the boundary line between adjacent properties is to be determined by reference to the deeds and the intention of the parties as reflected by the description in the deeds and where there is no ambiguity in the descriptions they are to be taken as the conclusive evidence of the intention of the parties. (12 Am. Jur. 2d, Boundaries, § 2, p. 548. See, also, *Winters v. Bloom,* 96 Kan. 443, 151 Pac. 1109; and *Hinnen v. Artz,* 99 Kan. 579, 163 Pac. 141.)

Therefore, where descriptions are unambiguous and in metes and bounds, as in the instant case, it requires only a survey to establish the true boundary.

On appeal, as in the trial below, the plaintiffs take the position that their situation in the case at bar falls within one of the exceptions to the general rule; namely, that the boundary line contended for by them was established through agreement and acquiescence by the plaintiffs and defendants and their predecessors in title notwithstanding the boundary line established by the survey.

Before proceeding further with plaintiffs' argument it should be noted that plaintiffs concede they have no standing with respect to adverse possession or as occupying claimants'—two other doctrines that operate as exceptions to the general rule.

Plaintiffs cite our cases and other authority to the effect that where a boundary line is in dispute or unknown it may be established by the mutual agreement of the parties fixing a line and acquiescence thereafter in the line so agreed upon. The proposition presented by plaintiffs is sound and in harmony with our decisions. The trouble is that it is not applicable to the instant case. Here, as noted, the trial court found there was no agreement, either express or implied, between Fritzler and Anschutz that the tree line was the boundary line. When the tree line was established, both tracts were owned by the same party—Fritzler. Further, the trial court noted there was no testimony that the boundary line was in dispute. When Anschutz sold to Dumlers the court, likewise, found there was no question or controversy about the boundary line.

Under similar rules of appellate review there is nothing presented in the record which could serve as a basis for overturning the trial court's findings on these matters. In short, there was no express agreement fixing the boundary line nor evidence from which an agreement could be implied. We agree with the trial court's observation that the designation of the tree line as the boundary line by Fritzler and in turn by Anschutz was a designation in each instance by one who was parting with his interest rather than consent by two people to each honor a line in the future. The statements were not made with the intention that they should be acted upon—no agreement was made in response.

With respect to plaintiffs' claim of acquiescence, that term, as applied to a boundary line controversy, is defined as a consent to the conditions and involves knowledge of them. It involves more:

than a mere establishment of a line by one party and the taking of possession by him. There must be knowledge on the part of the other party. The line acquiesced in must be known, definite and certain or known and capable of ascertainment. (12 Am. Jur. 2d, Boundaries, § 85, pp. 620-621.) In the case at bar Fritzler established the tree line when he was owner of all the property; neither Anschutz nor Dumlers were in the picture.

The case of *Steinhilber v. Holmes*, 68 Kan. 607, 75 Pac. 1019; *Terrell v. Chessmore*, 94 Kan. 611, 146 Pac. 1152; and *Blanford v. Biven*, 123 Kan. 269, 254 Pac. 1030, cited by plaintiffs, involved controversies where boundary lines were fixed by an express mutual agreement of the parties who were the owners of the adjoining properties at the time the agreement was made. The holdings in the cases mentioned are not determinative in the absence of a finding of an express agreement as in the instant case. Likewise, the more recent case of *Beams v. Werth*, 200 Kan. 532, 438 P. 2d 957, was a holding based upon an implied mutual agreement fixing a boundary line and acquiescence thereafter by the parties in the line agreed upon. In *Fyler v. Hartness*, 171 Kan. 49, 229 P. 2d 751, this court held there was sufficient evidence to show a boundary agreement "circumstantially" and affirmed the trial court's ruling to that effect. Again the holding rested on an implied agreement.

In the instant case, plaintiffs do not plead mutual mistake and ask for reformation of their deed. Their claims of an agreement, express or implied, and acquiescence were rejected by the trial court. The findings are in effect negative findings and in view of the record before us cannot be disturbed on appeal. (*Jensen v. Jensen*, 205 Kan. 465, 470 P. 2d 829; and *King v. Robbins*, 201 Kan. 748, 433 P. 2d 308.)

In view of our disposition of the appeal, the question of damages raised by plaintiffs need not be considered.

The judgment is affirmed.