No. 47,288

GEORGE A. MOORE, RALPH A. PAGEL and GENEVIEVE C. PAGEL, his wife, *Appellees,* v. ALBERT BAYLESS and FLORENCE BAYLESS, his wife, WILLIAM HAID and DOREEN HAID, his wife, ROBERT HENRY and ANNIE HENRY, his wife, JOHN BAYLESS, RURAL WATER DISTRICT NO. 6, SHAWNEE COUNTY, KANSAS, DALE MOORE, WALTER SEASTROM and ALLEN WHITTEN, *Appellants.*

(524 P. 2d 721)

Opinion filed July 17, 1974.

*Larry G. Pepperdine,* of Fisher, Patterson, Saylor & Smith, of Topeka, argued the cause for the appellants.

*Louis F. Eisenbarth,* of Sloan, Listrom, Eisenbarth, Sloan & Glassman, of Topeka, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

KAUL, J.: This is a boundary line dispute involving title to approximately two acres of land in Shawnee county. Plaintiffs who are in possession of the land in question prevailed in an action to quiet title and defendants appeal.

Plaintiffs are the owners of the south half of the southwest quarter of section eight, which lies adjacent to and on the north of the northwest quarter of section seventeen, which is owned by defendants Baylesses, Haids and Henrys. The boundary line in dispute is the common boundary line between the southwest quarter of section

eight and the northwest quarter of section seventeen. Plaintiff George A. Moore acquired the title to plaintiffs' tract by will from his father in 1904. At the same time Anna Moore, George A. Moore's mother, acquired title to the land now owned by defendants through the will of her deceased spouse. After the death of Anna Moore the northwest quarter of section seventeen was conveyed by the executor of her will to Sidney Hercules. In 1944 Hercules conveyed to William Smerchek and his wife, who in turn conveyed to the Baylesses in 1946. In 1968, Baylesses conveyed a small tract, described in metes and bounds and lying in the northwest corner of their tract, to Haids.

For convenience we shall refer to plaintiffs' land as the north tract and defendants' land as the south tract.

The case was tried to the trial court without a jury, and after hearing the evidence the trial court granted the relief prayed for in plaintiff's petition, quieting title in plaintiff's to the land in question, and enjoining the defendants from interfering with plaintiffs' occupancy thereof. The trial court made extensive findings of fact and conclusions of law which will be referred to hereafter.

The undisputed evidence discloses that during 1932, after Mr. Hercules acquired title to the south tract, he requested that plaintiff George A. Moore and he get together and measure their respective lands. The evidence discloses that Moore and Hercules measured off their respective lands with a wagon wheel and determined that an Osage Orange Hedge was located on their mutual boundary line. Each of the two men then proceeded to construct one-half of a fence which extended through the hedge to the east and west boundaries of their properties. The line is presently marked, partially by the remaining hedge row and partially by a fence between the respective properties. All witnesses testified that after the installation of the fence it was treated as the boundary by plaintiffs and by defendants and their predecessors in title until 1969 when defendants Haids procured a private survey, the result of which showed that the true section line was several feet to the north of the original hedge line. No claim to the contrary was made by defendants until after the survey was made in 1969. The instant litigation followed an attempt by defendants to have a waterline laid on the land lying between the hedge line and the section line as shown by the Haids' survey.

Findings of the trial court, which appear to be pertinent to the issues on appeal, are as follows:

"5. After Hercules acquired title to the defendants land in 1932, he requested the plaintiff Moore for measurements to determine their boundary. That [the] two of them proceeded to measure with the wagon wheel and establish a line which is presently marked, partially by an Osage Orange Hedge and partially by a fence. The fence was then erected by the two parties, the hedge being in existence at the time of the measurement, but being at the line they reached by their measurement. The fence ran through the hedge where the hedge existed along the same line as the hedge line.

"6. Thereafter, the plaintiffs, Moore, occupied and used all the land adjacent to and North of the hedge and fence exclusively, continuously and openly under the belief it was his. The plaintiffs, Pagel, have held with him in recent years up to the present time.

. . . . . . . . . . . . .

"10. In recent years, a part of the west portion of the hedge has been removed, but its previous location has been observed as the property line. The hedge was located in a line extended due west from the present hedge to Urish Road.

. . . . . . . . . . . . .

"12. That the evidence is undisputed on both sides that the hedge and fence row were thought by both sides to be the boundary line and each acquiesced in this understanding until the private survey was held in 1969.

"13. That this hedge row and fence have been considered by all parties in possession of the land since 1932 to be the boundary line between the two properties."

Based on its findings of fact the trial court concluded in pertinent part:

"1. That the actions of Sidney Hercules and George A. Moore in measuring their properties to find a boundary line, and the building of a fence on that boundary line, which was recognized by them and their successors in title for a period of thirty-seven (37) years amounts to the establishment of a boundary line and acquiescence therein, which fixed the rights of the parties as to the location of a boundary line between their properties.

"2. That the acts of George Moore and Sidney Hercules in establishing a boundary line, and building a fence on the line, *amounted to an agreement* that the fence and hedge would be the boundary line between these properties, and that said agreement was binding upon their successors in title and fixed the boundary line between the properties as to all parties to this lawsuit.

"3. That the law is clear that the location of a section line by a licensed surveyor employed by one of the parties, does not establish the boundary line nor fix the rights to the property in dispute.

"4. That plaintiff's actions in occupying, using and claiming the disputed property openly, notoriously and continuously *under a belief of ownership* for a period of thirty-seven (37) years established title to the disputed property in the plaintiffs, free and clear of any of the defendants." (Emphasis supplied.)

The trial court further concluded that title to the disputed property lying between the section line and the fence and hedge row line should be quieted in plaintiffs and that defendants should be permanently enjoined from entering such tract or disturbing plaintiffs' possession thereof.

From the evidence disclosed in the record before us, we believe the trial court's judgment should be affirmed on the theory of a mutual agreement implied from the circumstances (conclusion No. 2), as well as on the basis that plaintiffs have occupied the disputed property openly, notoriously and continuously under a good faith belief of ownership for a period of thirty-seven years (conclusion No. 4).

Defendants advance several arguments on appeal, but they fail to challenge the trial court's conclusion No. 2 that a boundary line had been established by agreement.

In a long line of cases this court has recognized the principle that where parties by mutual agreement fix a boundary line between their properties, acquiesce in the line so fixed and thereafter occupy their properties according to the line agreed upon, it must be considered as the true boundary line between them and will be binding upon the parties and their grantees. The line becomes the true dividing line between the lands in question by virtue of such an agreement, even though a subsequent survey should establish a different boundary line. (*Beams v. Werth,* 200 Kan. 532, 438 P. 2d 957; *In re Moore,* 173 Kan. 820, 252 P. 2d 875; *Wagner v. Thompson,* 163 Kan. 662, 186 P. 2d 278; *McBeth v. White,* 122 Kan. 637, 253 Pac. 212; and *Steinhilber v. Holmes,* 68 Kan. 607, 75 Pac. 1019.) Another established principle related to the issue is that the establishment of a boundary line by a survey, whether official or otherwise, does not determine the title to the land under controversy. (*Gnadt v. Durr,* 208 Kan. 783, 494 P. 2d 1219; *In re Moore,* Supra; *Wagner v. Thompson,* supra; and *Swarz v. Ramala,* 63 Kan. 633, 66 Pac. 649.)

In the case at bar, the trial court, in conclusion No. 2, found that the acts of George A. Moore and Sidney Hercules in establishing the boundary line and building a fence on that line amounted to an agreement between them that the fence and hedge would be the boundary line between their properties. An express agreement between the parties is not necessary. In the case of *Fyler v. Hartness,* 171 Kan. 49, 229 P. 2d 751, a suit to quiet title to disputed property factually similar to the case at bar, this court said:

". . . While it is true there was no direct evidence of a definite and specific agreement between the parties that the fence line was the true boundary, regardless of what a survey would actually show it to be, yet we think the evidence, taken as a whole, *clearly shows such agreement circum-stantially,* and the same is true of their predecessors in title down through the years. Both parties were satisfied, and recognized and understood they were purchasing to the fence." (p. 54.) (Emphasis supplied.)

In a boundary line dispute in *McBeth v. White,* supra, the action was brought in ejectment on the ground that the boundary line in question had been established by agreement. The defendant, as in the instant case, contended the elements of adverse possession had not been established. In the opinion it was stated:

*"But under the facts in this case there is no necessity of resorting to the doctrine of acquiring title by adverse possession.* The evidence in this case shows there was an agreement between Graves and Ramsey as to the boundary line between them. . . ." (p. 639.) (Emphasis supplied.)

Further in the opinion this statement appears:

". . . Under the facts established the case is governed by the rule announced in *Steinhilber v. Holmes,* 68 Kan. 607, 75 Pac. 1019, where it was held:

" 'Where parties by mutual agreement fix boundary lines and thereafter ascquiensce in the lines so agreed upon, they must be considered as the true boundary lines between them, even though the period of ascquiesence falls short of the time fixed by statute for gaining title by adverse possession.' " (p. 639.)

The undisputed evidence in the instant case is that George A. Moore and Hercules agreed to measure off their lands and that thereafter each constructed a fence on one-half of the line estab-lished and took possession of the land up to that line. Thereafter the parties and their successors in title acquiesced in the line as established. We can think of no circumstances that would have more probative value in establishing that an agreement had been made between them. The evidence fully supports the trial court's conclusion No. 2.

We have not overlooked the general rule that ordinarily the boundary line between adjacent properties is to be determined by reference to the deeds and descriptions of the properties therein. However, as pointed out in *Fritzler v. Dumler,* 209 Kan. 16, 495 P. 2d 1027, there are exceptions to the general rule and one which is firmly established is where a boundary has been established by agreement, either express or implied, and thereafter acquiesced in by the parties. In *Fritzler* plaintiffs sought to establish a boundary

by agreement, express or implied, as opposed to a line claimed by the defendants which was established by a legal survey. Plaintiff's claim of an agreement express or implied and acquiescence were rejected by the trial court in *Fritzler* and on appeal we said the findings of the trial court were in effect negative findings and in view of the evidence disclosed in the record could not be disturbed on appeal. Cases wherein the evidence was found insufficient to establish an agreement, express or implied, are distinguished from cases such as that at bar where an agreement was found to exist. (see cases cited in *Fritzler v. Dumler,* supra.) Unlike the posture of the *Fritzler* case, the case at bar comes to us on appeal with a trial court's finding of the existence of an agreement and a record which reflects ample competent evidence to support such finding.

What has been said effectively disposes of this appeal. The arguments of defendants in their brief on appeal deal essentially with issues relating to adverse possession. Defendants argue that (1) the evidence failed to prove the elements of adverse possession under the rules of law which defendants claim to be applicable; (2) plaintiffs' evidence on adverse possession was at variance with the pleadings; and (3) plaintiffs' evidence showed conduct which estopped them under the principles of equitable estoppel from claiming the relief prayed for.

Concerning defendants' assertion that the evidence failed to establish adverse possession, we have already pointed out where the evidence establishes an agreement as to a boundary line there is no necessity of resorting to the doctrine of adverse possession. On this point we observe that from our examination of defendant's argument it appears that they have overlooked what was said by this court in our opinion in *Armsrtong v. Cities Service Gas Co.,* 210 Kan. 298, 502 P. 2d 672; and *Stark v. Stanhope,* 206 Kan. 428, 480 P. 2d 72, concerning the belief of ownership concept established by the enactment of K. S. A. 60-503.

With respect to defendants' claim of variance between pleading and proof, the record discloses no objection made on this ground at any stage of the trial. Under the provisions of K. S. A. 1973 Supp. 60-215 (*b*) objection now comes too late. (*Tripp v. The Reliable Life Insurance Co.,* 210 Kan. 33, 499 P. 2d 1155; and *Thomas v. Evans,* 200 Kan. 584, 438 P. 2d 69.) In *Forster v. Fink,* 195 Kan. 488, 407 P. 2d 523, we held:

"A party impliedly consents to the introduction of issues not raised in the

pleadings by his failure to make objection to the admission of evidence relating thereto." (Syl. ¶ 3.)

Defendants make an assertion, unsupported by argument or authority, that the disputed property is not sufficiently described. The evidence discloses that the remaining portions of the hedge and fence are clearly evident. The trial court's findings are explicit in this regard.

In their final contention on appeal defendants argue that plaintiffs are estopped from asserting ownership in the disputed land. The trial court made no findings or conclusions relating to the doctrine of estoppel; a circumstance which undoubtedly results from the fact that estoppel was not pleaded nor does the record reflect that it was mentioned during the trial. Defendants' pleadings consist of an answer in the form of a general denial and a cross-petition or counterclaim claiming damages for slander of title and removal of survey stakes. The defense of estoppel is an affirmative defense which may not be proved under a general denial, but must be specially pleaded. (*Star Leasing Corp. v. Elliott,* 194 Kan. 206, 398 P. 2d 566; and *Muenzenmayer v. Luke,* 161 Kan. 597, 170 P. 2d 637.)

In a post-judgment motion entitled "Motion to Reconsider" and an addendum thereto subsequently filed by defendants, the matter of estoppel was raised. In this post-judgment motion defendants also mention a judgment rendered in the district court in a case entitled "Hercules v. Leary" which, defendants appear to claim, should serve as a basis for the application of estoppel. The record discloses that the motion was dismissed because of no appearance on the part of defendants. The trial court's dismissal of the motion is not challenged on appeal. Since the matters referred to were never presented to the trial court they will not be considered on appeal.

The judgment is affirmed.